Hawkins, J.,
delivered the opinion of the Court.
At the August Term, 1865, of the County Court for the County of Cheatham, a paper writing was propounded for probate, as the last Will and testament, and codicil thereto, of W. G. Shelton, dec’d. The probate was contested, and the same was, by order of the Court, certified to the Circuit Court of said county, to be tried. An issue of devisavit vel non, was made up in the Circuit Court, to try the validity of the Will and codicil, upon which a trial was had, which resulted in a verdict and judgment in favor of the Will and codicil. A motion for a new trial having been overruled, the contestants have appealed in error, to this Court.
The writing propounded as the Will, is dated June 4th, 1846, is in the usual form, and is signed by the testator and by two attesting witnesses. The' writing propounded as a codicil to the Will, and upon which the principal contest arises, is upon the same paper, and immediately underneath the signatures of the testator and the attesting witnesses to the Will; is signed by the testator and dated July 9th, 1861, but is without witnesses. It is in these words: “Wm. Shelton nor *131 bis beirs, is to bave any of my estate. (I mean William Shelton, my brother, and bis heirs.)”
W. Gr. Shelton died in 1863. ,The proof shows, that the writing offered for probate as a codicil to the Will, is all in the handwriting of the deceased, and that his handwrite was generally known among his acquaintances. There is proof showing that sometime after the death of W. Gr. Shelton the Will was found in a bundle of deeds in his secretary. It also appears that, during the last several years of his life, he frequently spoke to his friends and acquaintances about making a Will, and the disposition he intended to make of his property; and upon one occasion, stated, in substance, that he had already neglected it too long; and never, so far as the record discloses, after 1858,' intimated that he had a Will. The plaintiff, who was the nephew of the testator, and the principal legatee and devisee under the Will, lived with him at the time of his death, and took possession of his papers. After which, hé said to one witness, his uncle said he had no Will; to another he stated, his uncle left no Will; and to another he stated, he had searched for a Will, and could find none. He also stated he thought the heirs ought to come together and give him the home place.
It is now insisted the proof does not show that the testator intended the writing, dated July 9th, 1851, should take effect as a codicil to, or part of his Will; and that the charge of* his Honor, the Circuit Judge, to the jury, upon this branch of the case, is erroneous; and that he also erred in refusing to give certain instructions asked for by the counsel for the defendants.
*132 The instructions of His Honor upon this branch of the case, are singularly obscure and defective. He said to the jury: “If they are satisfied from the proof, that the writing appended, dated in 1851, was the handwriting of the deceased, they should find the same to be a codicil, provided it was not shown to them by proof that he was of unsound mind at the time it was dated; * * * * that the proof must show that the handwriting of the deceased was generally known by his neighbors and acquaintances.” The substance of these instructions, as we understand them, is this: If the jury were satisfied from the proof, that the writing dated in 1851, and appended to the Will of 1846, was in the handwriting of the deceased, and his handwrite was generally known to his acquaintances, they should find that it was a codicil to the Will, unless it appeared he was of unsound mind at the time of the date thereof. These requisites fall far short of the requirements of the statute, in order to constitute the writing a codicil to the Will, or a valid testamentary paper. Section 2163 of the Code, provides: “But a paper writing appearing to be the Will of a deceased person, written by him, having his name subscribed to it, or inserted in some part of it, and found after his death among his valuable papers, or lodged in the hands of another for safe keeping, shall be good and sufficient to convey lands, if the handwriting is generally known by his acquaintances, and it is proved by at least three credible witnesses, that they verily believe the writing and every part of it to be in his hand.”
His Honor failed to instruct the jury, that it was *133 ■necessary, in order to give validity to the writing as a testament, that the name of the deceased must be subscribed to or inserted in some part of it, and that the proof must show that the paper was found after the death of the deceased, among his valuable papers, or lodged in the hands of another for safe keeping; and the fact that it was in the handwriting of the deceased, must be proven by at least three credible witnesses. Yet all these requisites are as indispensable under the statute, as the proof of the fact that the instrument is in the handwriting of the deceased, and that his hand-write is generally known among his acquaintances — all together, are equivalent to publication.
Under these instructions of His Honor, all the jury had to do was to inquire, whether the proof satisfied them that the instrument was in the handwrite of the deceased, and whether his handwrite was generally known among his acquaintances; and being satisfied the proof established these two propositions, they were compelled to find in favor of the codicil, without enquiring whether it had been found after his death among his valuable papers, or lodged in the hands of another for safe keeping, or whether the fact that it is in the hand write of the deceased, had been established by the testimony of at least three credible witnesses. Yet, notwithstanding these instructions are so strangely defective, His Honor seems to have had the statute before him, or at least, its provisions in his mind, for he says further: “That if they found the paper was witnessed by two subscribing witnesses, and signed by the deceased in the presence of the witnesses, and that the witnesses 'at *134 tested the same at his request, and in their presence he^ acknowledged the same to be his last Will and testament, that then the paper would be valuable; and in contemplation of law, the writing attached to the paper dated in 1851, would have been found among his valuable papers.” But, as before stated, he wholly failed to instruct the jury that it was necessary for the party seeking to set up the paper as a testament, to show that it was found among the valuable papers of the deceased; and we are, therefore, wholly unable to discover what application the jury could make of this portion of the instructions. It cannot be said His Honor meant thereby to say to the jury, that it must appear the paper was found among the valuable papers of the deceased after his death, or that the jury so understood it; because the counsel for the defendant asked the Court to instruct the jury, “that it is incumbent on the plaintiff to prove that the writing offered as a codicil to the Will of W. G. Shelton, was found after his death among his valuable papers, or lodged in the hands of some person for safe keeping;” which he declined to do, holding the law to be as he had already charged. Thereby saying, in effect, to the jury, that such proof was not necessary. The instructions asked for ought to have been given to the jury, even without the application of counsel. They are substantially in the language of the statute, and the refusal of His Honor to give them, is error.
Under the rule laid down by His Honor, the jury, upon finding the writing was in the hand of the deceased, and that his handwrite was generally known among his *135 acquaintances, would have been compelled to have found that the writing was a codicil to the Will, even though it had been a promissory note, receipt, or any other character of instrument, and that, too, without reference to the question as to whether the deceased intended it to operate as a testamentary paper or not. Under the provisions of the Will, William Shelton, the brother of the deceased, or his heirs, would be entitled to a remainder interest in certain lands belonging to the testator; and if the paper writing propounded as a codicil to the Will, be admitted to probate, that interest in remainder will be defeated. Hence, it is ■ indispensable that all the requirements of the statute shall be complied with.
This Court has said, in construing the Act of 1784, chap. 10, sec. 5, the provisions of which are very similar to the provisions of the section of the Code before referred to, “No better definition of the meaning of the words ‘valuable papers,’ can, perhaps, be given, than that they consist of such as are regarded by 'the testator as worthy of preservation; in his estimation of some value. It is not confined to deeds for lands or slaves, obligations for money, or certificates for stock. Any others which are kept and considered worthy of being taken care of by the particular person, must be regarded as embraced in that description. This requirement is only intended as an indication on the part of writer, that it is his intention to preserve and perpetuate the paper in question, as a disposition of his property; that he regards it as valuable. * ' * *
*136 “ ‘To be found among bis valuable papers,’ implies that it must have been placed there by the writer, or with his knowledge and assent, not surreptitiously by some other person, and so deposited with intent and purpose at the time that it should be his Will. But when all that is done in conformity to the statute, it is not equivalent to a publication; it requires something more than verbal declarations, to revoke or defeat it. There must be some act done indicative of a change of purpose, such as the cancellation, destruction, or removal from the place of deposit, or reclamation from the hands of the person with whom it may have been lodged:” Marr vs. Marr, 11 Hum., 303.
Now, we think it follows from these definitions, and the reasoning of the learned Judge who delivered the opinion of the Court in this case, that, to give validity to a paper, as a testament under the provisions of the Code before referred to, it must have been deposited by the testator, or with his assent, among his papers which he regarded as valuable, or desired to preserve; or in the hands of another for safe keeping, with the intent that it should operate as his Will.
Suppose, then, in this case, the testator believed he had revoked the Will of 1846, whereby, he thought it of no value, and had consequently thrown it aside as worthless, with the writing attached, which is now propounded for probate as a codicil; and it afterwards turned out the testator was mistaken in the belief that he had revoked the Will, and, consequently, mistaken in his estimate of its value, could the writing attached be *137 probated as a codicil to that Will according to the principles announced in the case of Marr vs. Marr? We think not. To hold, under such a state of facts, that it could, would be to hold that the testamentary character of the paper depends upon the fact that the paper with which the writing is found is valuable, rather than upon the intent with which it was deposited, and give it effect even against the intent of the testator, as manifested by its removal from the place where it may have been originally deposited, with papers regarded as valuable, and thrown aside with those regarded as worthless.
It follows, then, that, as a legal proposition, the instructions given to the jury upon this point, are erroneous. Why, under the facts of this case,' as disclosed in the record, His Honor, the Circuit Judge, deemed it necessary to give such instructions, we are unable to conceive.
Other questions have been raised in argument, but we do not deem it necessary to notice them, further than to 'say, we think there is nothing in them. ,,
Eor errors in the charge of the Court, the judgment will be reversed, and the cause remanded.