# SMITH v. SMITH et al.—232 S. W. (2d) 338.

Eastern Section.   February 26, 1949.

Petition for Certiorari granted by Supreme Court, June 18, 1949.

508

R. E. Armstrong, of Kingsport, and C. H. Massengill, of Blountville, for plaintiff in error.

E. M. Woolsey, and Ernest B. King, both of Bristol, for defendants in error.

ANDERSON, P. J. This was a proceeding for the probate of a script as the holographic will of Fred E. Smith, deceased, of Bristol, Tennessee. It was tried in the Law Court at Bristol upon an issue of devisavit vel non. There was a verdict against the propounded instrument. A judgment was entered accordingly, and the proponents appealed in error.

The determinative question is presented by the proponents' contention that under applicable principles of law there was no material evidence to support the verdict, and hence that their motion for a directed verdict sustaining the script as the holographic will of the deceased, should have been granted.

Fred E. Smith died on December 29, 1946, survived by his widow, Bessie A. Smith, and four children, Alexander Smith Shipley, June Smith Esser, Martha A. Smith and Judy Smith McIver, as his only heirs. The propounded script is dated October 31, 1942. The deceased's estate consisted of both real and personal property worth $40,000 to $50,000. Following his death, no will having been found, his widow, Bessie A. Smith, and Bert E. Smith, a brother, qualified as joint administrators of the estate on January 4, 1947. Bessie A. Smith resigned the trust and was succeeded by E. M. Esser, husband of June Smith Esser, who qualified on January 31, 1947, as a joint administrator, with Bert E. Smith.

On the first Sunday in February, 1947, the propounded instrument was found in a drawer of a desk in the business office occupied by the deceased at and prior to his death.

The undisputed evidence showed that this instrument, including the signature, is wholly in the handwriting of the deceased, Fred E. Smith; and as the

case was developed, the issue narrowed to the single question of whether the deceased intended the instrument to operate as his will.

The original is in the transcript, and is in the following language, with abbreviations, interlineations and erasures reproduced exactly as they appear, insofar as it is possible to do so on a typewriter:

"Last Will and Testament

"After all legal [and personal]* indebtedness paid, in appreciation valuable financial aid and wise counsel, 10% to Bert E. Smith or Bert E. Smith Jr. if Bert E. Smith deceased, if both deceased to revert to my general estate, 10% to three causes, Home Mission Committee of Holston Presbytery, King College $\frac{\text{Bristol}}{\text{YMCA,}}$ equally. $1000.00 Bessie A. Smith, Remainder to my children, Alexander Smith Shipley, June Smith Esser, Martha Hamilton Smith and Judith (Judy) Smith, share and share alike.

"Such real and personal property that may be vested in me at my death shall be sold and converted into cash before / distribution is made. final

"Executor not to be limited by time to convert, except limited to 5 yrs after my death until distribution made. Advise early disposition.

"Share to Martha Hamilton Smith held in trust by executor, acting as trustee $40.00 Mo. until married and lived continuously with husband 2 yrs. If severe illness trustee distribute as in his discretion is needed.

"Appoint Bert E. Smith, my brother, executor, if deceased / Bert E. Smith, Jr, my nephew. or physically unable

---

*In the original, a line is drawn through these two words.

"May serve without bond as executor and/or trustee Those of my children who may have completed a college education and to whom [a charge]* I have entered a charge shall be accounted for in settlement.

"Oct. 31-1942                                    Fred E. Smith."

The entire instrument was written with a pencil on one piece of yellow paper approximately 8½ by 13 inches in size, such as is usually found in business offices in pads and used for scratch paper and memoranda.

The words crossed out in the first line were marked over heavily with a pencil so as to obliterate them. As indicated, they appear to have been, "and personal". The words, "Advise early disposition", in the last line of the third paragraph, have the appearance of having been written with a different pencil, or at least one with a different lead.

The deceased was 59 years of age at the time of his death. For many years he operated an insurance business in Bristol under the firm name of "SKM Agency". He had attended college for two years and was an experienced and apparently successful business man. He was habitually careful and precise in executing his business transactions, and exacted like conduct on the part of his employees, of whom there were four at the time of his death.

The yellow pads of paper, on one sheet of which the propounded script is written, were customarily used by the deceased for making memoranda and rough drafts of instruments preparatory to putting them in final form. Sometimes he drafted letters on such paper, which were turned over to his secretary to be typewritten. In his business office the deceased had an iron safe, or "vault",

---

*In the original, a line is drawn through these two words.

in which were kept his "insurance policies, deeds of trust and things like that, wrapped up in a bundle with a string tied round them". Records of his business, "some church papers", contracts and letters, were also kept in the safe. After his death no papers of any permanent value were found elsewhere.

Shortly after the deceased died, a search for a will was made at his business office and elsewhere, but, as stated, none was found, and administrators of his estate were accordingly appointed and qualified. In the prosecution of their trust, they reorganized the insurance business and sold the controlling interest therein. On the first Sunday in February, 1947, the day before the purchaser was to take over the business, Messrs. Esser and Shipley, sons-in-law of the deceased, went to the office in which the business was conducted, for the purpose of separating the personal belongings of the deceased from those of the business. While so engaged, Esser discovered the propounded script in one of the bottom drawers of an open desk which had been customarily used by the deceased in the prosecution of his business. The desk had been searched before by Esser and his co-administrator, Bert Smith, in an effort to locate a will, and Esser was unable to explain why the script had not been discovered at that time. Referring to the discovery of the will, Esser testified: "This was on a tablet form, I mean the tablet, and it was lying in the desk drawer in the left hand side desk drawer, with some old books and some old seals of SKM Incorporated, long time ago, and some other things". Elsewhere he testified that the books were "old, out-of-date insurance books", and "this (the script) was lying down flat, just flat. I don't know whether it was on top or middleway or

on the bottom, but I happened to pull it out and look at it to see what it was, whether to throw it away or not; when I looked at it I read it and turned around and showed it to Shipley''. Whether the sheet on which the instrument had been written had been detached from the yellow pad at the time it was found, does not clearly appear; but the pad seems to have been found in the same drawer.

Shipley testified substantially to the same effect and added that the corporate seals found in the bottom desk drawer were those of a corporation or corporations with which the deceased had formerly been identified. In the other drawers of the desk were found some current receipts ''and things like that'', but nothing of a permanent value.

With respect to the use to which the drawers were put, the decedent's secretary testified that he ''had some of his insurance claims and pending stuff in there and . . . personal letters and statements and books, things like that in there, I don't know what else he had.'' Elsewhere she testified that in the safe were kept all of the records of the business, or as much as could be put in there, ''some church papers'', contracts and letters, and ''things like that''.

The evidence by which the foregoing facts were shown is without substantial conflict and, as said, it is contended that they require as a matter of law that the propounded instrument be admitted to probate. The case for the proponents has been presented elaborately and with much ability. We have given it the very careful consideration which it deserves.

■■ By the Acts of 1941, Chapter 125, the legislature adopted an act to make uniform the execution of

wills. This comprehensive statute was intended to cover the whole subject. Section 5 deals with holographic wills, and had the effect of repealing much stricter provisions relating to the same subject. Northcross v. Taylor, 29 Tenn. App. 438, 197 S. W. (2d) 9, 12. The only statutory requirements now are that the signature and all material provisions of the propounded instrument must be in the handwriting of the testator and his handwriting be proved by two witnesses.

■ ■ But as was true under the former statute, Code Section 8090, a testamentary intent must accompany the performance of the statutory requirements and this must be proven in a manner which conforms to applicable rules of evidence and procedure. Otherwise the script cannot be accepted as a will. Marr v. Marr, 39 Tenn. 303; Hooper v. McQuarry, 45 Tenn. 129; McCutcheon v. Ochmig, 60 Tenn. 390; Douglass v. Harkrender, 62 Tenn. 114.

■ Testamentary intent does not depend necessarily upon the testator's understanding that in executing the particular paper he was making a will. If he manifests a clear intention to dispose of his property after his decease and observes the statutory formalities, it is immaterial what he thought the instrument was which he executed. 68 C. J. 717; 57 Am. Jur. 47, Sec. 12.

■ Upon the other hand, it is not conclusive in favor of the propounded instrument that it is in the form of a will, perfect in all its parts, written and signed in full compliance with the statutory requirements. It may still not be operative as a will because shown by proof not to have been so intended. Douglas v. Harkrender, 62 Tenn. 114. Thus it is held that mere notes or memoranda for a will, drawn in the form of one but not animo test-

andi, cannot operate as such, even though there was a compliance with all the statutory ·formalities. Ibid. Eatherly v. Eatherly, 41 Tenn. 461, 462, 78 Am. Dec. 499; Guthrie v. Owen, 21 Tenn. 202, 36 Am. Dec. 311; Crutcher·v. Crutcher, 30 Tenn. 377, 385.

██ ██ If the animus testandi be doubtful, all the facts or circumstances may be looked to, and it is for the jury to determine from all the evidence, intrinsic or extrinsic, whether or not the testator intended the instrument to operate as his· will. Sizer's Pritchard on the Law of Wills and Administration, Section 232; Crutcher v. Crutcher, supra; Marr v. Marr, supra: Hopper v. McQuarry, supra; McCutcheon v. Ochmig, supra; Douglass v. Harkrender, supra; Reagan v. Stanley, 79 Tenn. 316; Pulley v. Cartwright, 23 Tenn. App. 690, 137 S. W. (2d) 336.

Under the former statute, one of the essential requirements in the case of a holographic will was that the propounded instrument be found after the death of the deceased "among his valuable papers, or lodged in the hands of another for safe-keeping". In this provision here was a great deal of common sense. It was grounded on the everyday experience of the average man, and provided a sound and practicable way whereby he could make it appear after his death that he regarded a secretly-drawn instrument as valuable and intended thereby to preserve and perpetuate it as a will disposing of his property. Marr v. Marr, supra; Brogan v. Barnard, 115 Tenn. 260, 90 S. W. 858, 112 Am. St. Rep. 822, 5 Ann. Cas. 634; Howell v.·Moore, 14 Tenn. App. 594.

Formerly, in the absence of proof meeting this statutory requirement, an instrument could not be regarded as a holographic will of real property, even though it conclusively appeared otherwise that the writer so intended.

The policy of the law embodied in the statute operated to defeat the intention.  Idem.

■■■■  As has been seen, the present statute dispenses with the requirement that the propounded instrument must have been found among the valuable papers of the decedent or lodged in the hands of another for safe-keeping; but under the general rules of evidence, the place where the propounded paper was kept by the writer and found after his death, is still a circumstance of no little probative value to be considered along with all of the other facts and circumstances upon the question of whether he intended it to operate as a will.  In short, the effect of the statutory provision was to reduce the place of deposit from an essential factor to an evidential circumstance relevant to the animus testandi.  The weight to be given it is primarily for the jury and generally will depend upon the accommodations and arrangements of the alleged testator.  Cf. Tate v. Tate, 30 Tenn. 465.

In Brogan v. Barnard, supra, the Court adverts to the significance from a probative standpoint of the fact that a script alleged to be holographic will was not kept by the writer among his valuable papers.  In that case the decedent was a small merchant and country post master, who kept his office in a store.  The paper in question was found after his death in a box in which he kept postage stamps and stationery belonging to the post office, which, while in his possession, were the property of the Federal Government.  After holding that these facts were not sufficient to show a compliance with the mandatory provisions of the statute, and hence on that account the paper could not be established as a will, the Court said: ''It is also evident that the decedent did not consider the stamps and receipts his valuable papers,

or the box where he kept them a place for deposit of such papers, since he kept his deeds, notes, etc., in a locked trunk in his residence some distance from his store. This is a most pertinent fact tending to show the intention of the deceased in relation to the paper now offered as his will." [115 Tenn. 260, 90 S. W. 860.]

That case, it is true, arose under the former statute, but observations of the Court are nonetheless instructive, since they refer not to the essentiality of the requirement but the significance in relation to testamentary intent of the fact that a propounded script was not found among the valuable papers of the decedent. See also, Dietz v. Gallagher, 169 Tenn. 435, 446, 447, 88 S. W. (2d) 993; Tobin v. Nordness, 47 S. D. 255, 197 N. W. 783; 68 C. J. 724.

In the present case, the undisputed evidence shows a compliance with present statutory provisions. But we are unable to escape the conclusion that the animus testandi was a question for the jury. It is true that there was no substantial conflict in the evidence by which the material circumstances were shown; but these circumstances pointed to different conclusions. Upon the one hand, the facts that the instrument was shown to be wholly in the handwriting of the deceased; that it is headed, "Last Will and Testament", and is signed and dated, all tended to show by legitimate inferences that the deceased intended the instrument to operate as a will, and if no other circumstances pertinent to the issue had been shown, would no doubt have been sufficient under the present statute to justify a conclusion favorable to the proponents.

Upon the other hand, we think there were inferences warranting the opposite conclusion. The jury were

fully justified in finding that the instrument was not discovered among the valuable papers of the decedent, but under circumstances which negatived the idea that he regarded it as being of any value or intended it to be effective as a disposition of his property. In addition, the informality of the instrument as demonstrated by the type of paper upon which it was written, the fact that it was written with a pencil, the abbreviations, interlineations and erasures; the syntax, and the memorandum-like characteristics of the language, when considered in the light of the business training, the habits and the accommodations of the deceased, all tended to support the view that he did not regard the instrument as a completed one in the sense that he intended it to operate as his will.

In brief, these facts and circumstances, taken together, were sufficient to support the conclusion that the deceased had not finally resolved that the propounded script should be effective as his last will and testament and hence the animus testandi was lacking.

There was thus a conflict in the evidentiary inferences to be drawn from the proven circumstances. The resolving of this conflict was for the triers of fact. It may be that they would have been justified in finding either way. But if this be true, it necessarily follows that it cannot be said that the verdict they reached was unsupported by any substantial evidence.

The fourth assignment of error is that the Court erred in transferring the case to the jury docket on his own motion and without a request by either the proponents or the contestants for a jury trial. This assignment of error must be overruled for several reasons. The first is that the record fails to show that the jury trial

was had upon motion of the judge. The second is that so far as appears, both the proponents and the contestants went to trial before the jury without objecting to that course of procedure. The third is that upon consideration of the motion for a new trial challenging the result, the verdict was approved and judgment rendered by the same judge before whom the case would have been tried had there been no jury. Hence it cannot be said to affirmatively show that the fact the case was submitted to a jury was prejudicial to the rights of the proponents. Shelton v. Hickman, 26 Tenn. App. 344, 355, 356, 172 S. W. (2d) 9; Code Section 10654.

██ ██ The seventh assignment of error is to the effect that the "judge erred in failing to sustain proponents' motion for a judgment notwithstanding the verdict, made after the motion for a new trial had been overruled." By this motion the sufficiency of the contestant's pleadings is challenged. The contention is that they "failed to aver in their petition to set aside the will that said instrument was purely a memorandum of the intentions of the testator, which ground of attack was the only one relied upon in the evidence and argument to the jury, and by failure to allege such ground of attack it was not an issue in the trial of the case and could not be considered by the jury in its deliberations and findings in the case". In a contest of this kind, the issues to be tried in the circuit court are not made by the petition and the answer thereto filed in the probate court, but are made up under the direction of the court after the case has reached the former tribunal. Bowman v. Helton, 7 Tenn. App. 325; Code Section 8107. In making up the issues, no more is required than that the party offering the paper for probate shall affirm it to be the testator's

will, and the contesting party shall deny it. Ford v. Ford, 26 Tenn. 92; Harrison v. Morton, 32 Tenn. 461; Carruther's History of a Law Suit, 549, 550. Such a denial by the contestants lets in all matters of defense. Harrison v. Morton, supra. See also Guthrie v. Owen, 21 Tenn. 202, 36 Am. Dec. 311.

The pleadings in the present case were in strict accord with these requirements.

Except insofar as they have been disposed of by what has already been said, the questions raised by other assignments of error would require that we weigh the evidence. This is not within our province. Upon that point the approval of the verdict by the trial judge is conclusive.

The result is that the judgment is affirmed at the cost of the proponents.

Felts, Hickerson and Swepston, JJ., concur.