MRS. JIM DAVIDSON, Executrix, Plaintiff-Defendant in Error, v. SAM B. GILREATH et al., Defendants-Plaintiffs in Error.—273 S. W. (2d) 717.

Middle Section. July 30, 1954.

Petition for Certiorari denied by Supreme Court, November 16, 1954.

C. D. Lamb, of Fayetteville, John J. Hooker, of Nashville, and S. B. Gilreath, of Lebanon, for plaintiffs in error.

Willam McCown, Jr., of Fayetteville, for plaintiff-defendant in error.

Robert Stevens, of Fayetteville, for Silent Unity Church.

HICKERSON, J. This is a will contest between the plaintiff, Mrs. Jim Davidson, a beneficiary under the paper writing in dispute, and named as executrix therein, and the defendant contestants, who are the heirs at law and next of kin of the deceased, Mrs. Virginia Burnam Bright. The paper writing in question will be referred to in this opinion as the script. Judgment was entered by the trial judge, upon a jury verdict, sustaining the script as the will of Mrs. Virginia Burnam Bright. That judgment is challenged in this Court by only one assignment:

" 'Because the Court erred in overruling, and not sustaining, the defendants' motion for a directed verdict made at the conclusion of all the evidence.'

"That this was error because there was and is no conflict in the evidence and because there was and is no evidence at all upon which a verdict or judgment for the plaintiff, and in favor of the will, could be rendered or could stand, or could rest."

Chapter 125 of the Public Acts of Tennessee for 1941, 1950 Code Supplement, Sections 8098.1 to 8098.8 inclusive, regulates the execution of wills in this State. Section 5 of this statute, 1950 Code Supplement, Section 8098.5, provides:

"Holographic will.—No witness to a holographic will is necessary, but the signature and all its material provisions must be in the handwriting of the testator and his handwriting must be proved by two witnesses."

These issues were presented in the trial court:

1. Were the signature and all the material provisions of the script in the handwriting of Mrs. Virginia Burnam Bright?

2. Did two witnesses prove the fact that the signature to the script and all the material provisions thereof were in the handwriting of Mrs. Virginia Burnam Bright?

3. Did Mrs. Virginia Burnam Bright intend for this script to be her will?

It is conceded that the script must be sustained as a holographic will, if at all.

Code Section 10343 provides:

"General verdict.—A general verdict, although it may not in terms answer every issue joined, is nevertheless held to embrace every issue, unless exception is taken at the term at which the verdict is rendered."

The verdict in this case was a general verdict, so the jury found each of the foregoing determinative issues in favor of the proponent, the trial judge approved this verdict, and entered judgment thereon, as stated. Thus these three determinative issues are established in favor of the proponent under our constitution and all the decisions of our appellate courts, if there is material evidence to support the verdict of the jury and judgment of the court entered thereon.

In order to limit the scope of the review in this Court to the precise question presented for our determination, we here state: It is shown by the testimony of two witnesses, with no evidence to the contrary, that the signa-

ture and all the material provisions of the script in question were in the handwriting of Mrs. Virginia Burnam Bright. So, the first two questions stated above are settled in favor of proponent by the verdict and judgment in the lower court; that is, the signature to the script and all the material provisions thereof were proved by two witnesses to be in the handwriting of Mrs. Virginia Burnam Bright.

That leaves for our consideration and determination the question: Did Mrs. Virginia Burnam Bright intend for this script to be her will?

Upon this question, this Court said in Smith v. Smith, 33 Tenn. App. 507, 516, 232 S. W. (2d) 338, 341:

"If the animus testandi be doubtful, all the facts or circumstances may be looked to, and it is for the jury to determine from all the evidence, intrinsic or extrinsic, whether or not the testator intended the instrument to operate as his will. Sizer's Pritchard on the Law of Wills and Administration, Section 232; Crutcher v. Crutcher, supra [30 Tenn. 377]; Marr v. Marr, supra [39 Tenn. 303]; Hopper [Hooper] v. McQuarry, supra [45 Tenn. 129]; McCutcheon [McCutchen] v. Ochmig, supra [60 Tenn. 390]; [R. B.] Douglass [& Co.] v. Harkrender, supra [62 Tenn. 114]; Reagan v. Stanley, 79 Tenn. 316; Pulley v. Cartwright, 23 Tenn. App. 690, 137 S.W. 2d 336."

It is the contention of contestants that there is no evidence to support a finding by the jury that Mrs. Virginia Burnam Bright intended for this script to be her will. They refer to the script and to many facts and circumstances to support their theory.

In considering and determining this question, as presented by the assignment, we are governed by the

rules stated by this Court in Phillips v. Newport, 28 Tenn. App. 187, 202-203, 187 S. W. (2d) 965, 971:

"Any fact may be proved by direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. In civil cases facts are proved by a preponderance of the evidence. If unequal conflicting probabilities, or unequal inconsistent theories are shown by the evidence; or if the minds of reasonable men might differ from the proved facts as to whether the conflicting probabilities or inconsistent theories, are equally supported by the evidence, the case must go the the jury. Law v. Louisville, etc., Railroad Co., 179 Tenn. 687, 699, 170 S.W.2d 360; New York Life Insurance Company v. Nashville Trust Co., 178 Tenn. 437, 159 S.W.2d 81; Bryan v. Aetna Life Insurance Co., 174 Tenn. 602, 130 S.W.2d 85; Knights of Pythias v. Steele, 107 Tenn. 1, 63 S.W. 1126; Pickard v. Berryman, 24 Tenn.App. 263, 142 S.W.2d 764; Gifford v. Provident Life Insurance Co., 16 Tenn.App. 21, 64 S.W.2d 64; Jones Commentaries on Evidence, Second Edition, Revised and Enlarged, page 23, section 12.

"The trial judge should direct a verdict for defendant, and hold as a matter of law that there is no evidence to support the verdict when the proved facts and circumstances give equal support to the inconsistent theories of plaintiff and defendant. Law v. Louisville, etc., Railroad Co., supra; Pennsylvania Railroad Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819.

"But in considering whether the proved facts and circumstances give equal support to the inconsistent theories of plaintiff and defendant, or whether equal probabilities exist in relation to such theories, upon

a motion to direct a verdict for defendant, the court must be governed by the general fundamental rule in regard to directing verdicts, to-wit: if the minds of reasonable men must reach a conclusion adverse to plaintiff, from all the facts and circumstances shown, upon an issue which is fatal to plaintiff's cause of action, the court should hold as a matter of law that plaintiff has not made out his case, and direct a verdict for defendant. Hines v. Partridge, 144 Tenn. 219, 231 S.W. 16; Patillo v. Gambill, 22 Tenn.App. 485, 124 S.W.2d 272.''

Applying these rules, the following facts are established with no evidence to the contrary: The script in question is written in ink and we here quote it:

''The Last Will And Testament of Virginia Burnam Bright.

''Fayetteville, Tennessee

''I, Virginia Burnam Bright, being of sound mind and disposing memory do make and declare this my Last Will and Testament;

''Item One: I direct that, if there be any just debts, they be paid as soon after my death as possible.

''Item Two: I give and bequeath to Margaret Jones of Mobile Alabama $1,000 in money.

''Item Three: I give and bequeath my shares of stock in Stokley also Plough, to Emily Burnam, my brother John's daughter.

''Item Four: I give and bequeath to Virginia, Mrs. Jim Davidson $1,000 in money, also all of my mother's and household and personal property of every nature.

''Item Five: The balance of money from my home I give and bequeath to Silent Unity of Unity School of Christianity 917 Tracy Ave., Kansas City 6, Mo

"I hereby appoint Mrs. Jim Davidson as Executor of this my last will and testament without requiring bond.

"Dated and closed this the 24 day of December, 1949.

"Virginia Burnam Bright

"Signed and acknowledged in our presence and in the presence of each of us by the said Virginia Burnam Bright, as her last will and testament.

"This — day of —

"_____.

_____.,,

Towards the top of the front page of the script, in pencil, and in the handwriting of Mrs. Virginia Burnam Bright, are written these words:

"I give my lot in West End 150 First Av x 174 Swanson Blvd for a Unity Church and manse after my death June 1951."

There appears in the record the will of Samuel A. Bright, which shows that it was executed by him and signed by two witnesses on January 24, 1938. At the top of this Samuel A. Bright will, in typewriting, appear these words: "The Last Will and Testament of Samuel A. Bright, Tellico Plains, Tennessee;" then there is a comma and these words, written by Mrs. Virginia Burnam Bright with pen and ink, immediately follow: "Dave, Matt, and myself, Virginia B. Bright. November 25, 1950."

On the back of the Samuel A. Bright will there appear these words written by Mrs. Virginia Burnam Bright with pen and ink and emphasized by her as indicated here: "Sam's will Matt wrote for all of us and is *my will* to the end of establishing a Unity Church on my lot on 1st Av. West End. November 23, 1950." These words were unsigned.

When the script was presented to the County Court for probate, the proponent, also, called to the attention of the County Judge the pencil notation on the face of the script and the words written on the will of Samuel A. Bright. In the Circuit Court, proponent stipulated, or stated in open court, that she was not insisting on these memoranda as being testamentary in character; so it was ordered by the trial judge, "that the writing in pencil bearing date 'June 1951' on the face of said will is not the codicil or will of said Virginia Burnam Bright and that the paper writing consisting of a typewritten instrument entitled 'The Last Will and Testament of Sam Bright' etc. and certain writings in ink thereon dated November 25, 1950, is not the will of Virginia Burnam Bright."

On the face of the script, it appears that a line made by pencil has been drawn through the figures and words, "$1,000 in money," in Item Two.

It also appears that a line made by pencil has been drawn through the words, "Item Three."

Item Four has a large cross sign drawn across the face of it.

Mrs. Virginia Burnam Bright had a will before her when she drafted her own "will" (the script in question). The terms used in the script are closely similar, almost identical, with the terms used in the will of Samuel A. Bright. She was not a lawyer.

When Mrs. Virginia Burnam Bright was preparing to go to the hospital, she told her friend and neighbor, Mrs. Whitaker, to get her valuable papers and take care of them for her. These valuable papers were in drawers of a sideboard in the room where Mrs. Bright lived. These drawers were locked; and all of the valuable papers of Mrs. Bright, except the script, were in these locked

drawers. Mrs. Bright died a few days later at the hospital.

Mr. Mack Whitaker qualified as administrator of the estate of Mrs. Bright, since no will was found immediately after her death.

The administrator and his wife went over the house and effects of Mrs. Bright to see if there were anything valuable among her things. Mrs. Whitaker found the script in an old envelope which had in it a copy of Sam Bright's will, an expired termite contract, some cancelled checks, and the script. Not knowing what was in the envelope, it was taken to General C. D. Lamb, an attorney, to see if there were any valuable papers in this envelope. The papers had no value, except the script, if it did. This script was found in an old storage, junk, or plunder room. In this room were broken, discarded chairs, a garden hose, several garden tools, old coal scuttles, empty trunks, and empty fruit jars, and a chopping axe. There were rough shelves in this plunder room and the envelope in which the script was found was on a shelf and the envelope was covered with dust. To reach this plunder room from the room in which Mrs. Bright lived it was necessary for her to go through two or three rooms and three or four doors. We think it is the only reasonable inference that could be drawn from the testimony and facts and circumstances that Mrs. Bright drew the pencil lines and cross mark on the script, then put it with these other papers of no value in the envelope, and placed them in this old plunder room. It is not shown when these pencil marks were made on the script; but, necessarily, they had to be made before the script was put in the junk room.

█ In Dietz v. Gallaher, 169 Tenn. 435, 88 S. W. (2d)

993, 997, our Supreme Court, opinion by Judge Green, quoted with approval this rule taken from Beaty v. Beaty, 1 Add., 154, 162 Eng. Reprint, 54:

"This paper contained an attestation clause, but at the time of testator's death no witnesses had been procured to attest the instrument. Probate was denied because, the court said, 'if a testamentary paper be imperfect, either in itself, or in the writer's apprehension of it, it can only be entitled to probate, on proof being furnished of his having been prevented by what is technically called the "act of God," from completing it. As, therefore, the natural inference to be drawn from the attestation clause at the foot of a testamentary paper is, that the writer meant to execute it in the presence of witnesses, and that it was incomplete, in his apprehension of it, till that operation was performed—the presumption of law is against a testamentary paper, with an attestation clause not subscribed by witnesses; where the testator is not proved, as he is not suggested even in the present case, to have been prevented by any "act of God" from going on to complete it, had he so intended.' "

To the same effect our Supreme Court stated the rule in Campbell v. Henley, 172 Tenn. 139, 110 S. W. (2d) 329, 330:

"If the instrument propounded as a holographic will is unfinished and incomplete, or not subscribed by the testator, though his name is inserted in some part of it, or with an attestation clause and no attesting witnesses, the presumption is that the writer did not intend the paper in that imperfect state to be his will; but the presumption may be rebutted by satisfactory proof that it was intended, in the form

in which it appears and as far as it goes, to be the last will and testament of the deceased. Crutcher v. Crutcher, 30 Tenn. (11 Humph.) 377; Marr v. Marr, 39 Tenn. (2 Head) 303; R. B. Douglass & Co. v. Harkrender, 62 Tenn. (3 Baxt.) 114; Davis v. Davis, 74 Tenn. (6 Lea) 543; Saunders v. Hackney, 78 Tenn. (10 Lea) 194; Dietz v. Gallaher, 169 Tenn. 435, 88 S. W. 2d 993, 997.''

■ Mrs. Bright drafted the attestation clause, but left the date thereon blank, and no witnesses ever signed. The script was presumed to be invalid as a will. We think every circumstance developed by the evidence strengthens this presumption of invalidity.

We do not think the minds of reasonable men could differ on the ultimate question here presented. We hold, therefore, that the evidence establishes the fact, with no evidence to the contrary, that Mrs. Bright did not intend for this script to be her will; that she drew the lines through certain portions of it; crossed out another item; never had it witnessed; thought it was incomplete and unfinished without the witnesses; and discarded it as a worthless piece of paper by putting it in the junk room as junk. It is our opinion that no person of reasonable mind would reach the conclusion that Mrs. Bright put the rest of her valuable papers in the drawers of the sideboard of the room in which she lived, under lock and key; and took her will, one of her most valuable papers, two or three rooms and three or four doors away and put it in a plunder room which contained the articles stated above.

The statement concerning the rug is not sufficient to breathe life into this unfinished presumptively invalid paper. At most, Mrs. Bright only told her friend to come

and get a rug she wanted to give her. She did not refer to the will.

The notations on the script and on the Sam Bright will, while not testamentary in character, lend support to the theory that Mrs. Bright did not intend for the script to be her will.

There is no evidence in the record before us to support a verdict which would declare this script to be the will of Mrs. Virginia Burnam Bright. The trial judge should have sustained the motion of defendants to direct a verdict against the will. To correct that error judgment will be entered in this Court adjudging that the script in question is not the will of Mrs. Virginia Burnam Bright. It was the duty of Mrs. Davidson to defend this script as she did, so she will be permitted to pay all costs out of the funds in her hands which belong to the estate of Mrs. Virginia Burnam Bright and receive credit therefor in her settlement.

Remand the cause to the circuit court for such further proceedings as may to that court seem proper, consistent with this opinion and the judgment of this Court.

Felts and Howell, JJ., concur.