IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 8, 2004 Session

# IN RE: ESTATE OF KATHLEEN LEE MEADE, Deceased, L. GRADY LEE, v. HELEN JO GILLIAM

**Direct Appeal from the Chancery Court for Sullivan County, Probate Division**
**No. P-02-12468      Hon. Richard E. Ladd, Chancellor**

---

**No. E2003-02629-COA-R3-CV - FILED AUGUST 30, 2004**

---

A typewritten document and a handwritten document prepared later in time were offered for probate. The Trial Court rejected the handwritten document and admitted the typewritten document to probate as the Last Will and Testament of Deceased. On appeal, we reverse.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

Herschel Pickens Franks, P.J., delivered the opinion of the court, in which Charles D. Susano, Jr., J., William H. Inman, Sr. J., joined.

Mark D. Harris, Kingsport, Tennessee, for Appellant.

Kerry A. Musick, Blountville, Tennessee, for Appellee.

## OPINION

In this action, the issue before the Trial Court, as well as this Court, is which of two Wills was the last Will of the Testatrix, Kathleen Lee Meade, ("decedent"). Decedent was a widow with no children, who died on May 4, 2002, at age 79.

The petitioner Grady Lee, presented for probate a typewritten Will prepared by an attorney and executed on March 15, 2001. Lee, the brother of the decedent, was named as executor in the Will. Respondent, Jo Gilliam, niece of the testatrix, offered for probate a handwritten Will

that she propounds as the decedent's last Will, executed subsequent to the typewritten Will.[1]

Following an evidentiary hearing, the Trial Court concluded the typewritten Will was the Last Will and Testament of decedent, and in his Opinion said:

> I think every witness testified the truth as they believed it at time. . . There's no doubt in my mind that what's been filed as Exhibit #2, the so-called "handwritten will," was written by Decedent after the execution of Exhibit #1, which was executed on the 5th day of March, 2001. No doubt in my mind at all. But that's not sufficient to answer the problem here. The document written in the Decedent's handwriting, there must be an intent that it be a will. And I find that it was not her intent for Exhibit #2 to be here will. I find that her brother was not available due to his wife's illness at the time, to come at her beck and call like previously. That her niece here was at her beck and call and Jo Gilliam was the primary care giver in the last months of her life. And I have no doubt that she told Ms. Gilliam that she was going to leave things to her. And unconsciously she did a very cruel act here, I think, in hoping to keep someone taking care of her. Exhibit #2 is found in Exhibit #6 in a tablet in the kitchen drawer. The proof is that the Decedent, Ms. Meade, was very meticulous, a good business woman, very meticulous in everything she did. . . [s]he formed in her mind ahead of time what she wanted in the will before she went to the lawyer's office. She knew that she needed a good, valid will prepared, and she had prepared, was Exhibit #1. I hold the Exhibit #2 is something she used to show her niece to make sure her niece continued to take care of her but she never reached the point of adopting it as her will. Very strong circumstantial evidence of this, she would attempt, if she had intended for that to be a will to couch it in terms more like the attorney-prepared will. It was a thought she had but it never reached fruitation[sic] here, and for that reason I find that the Exhibit #1 is the will controlling her estate and that Exhibit #2 is not her will.

Exhibit #2, as found by the Trial Court, is in the handwriting and signed by deceased. It reads:

Will

> Jo and Ron Gilliam, my (niece) & her husband said they would take care of me, and not put me in a rest home. They have said if they had to they would move in my home and take care of me.
>
> Grady Lee (brother) $20.00 and my car. Jo Gilliam (niece) & (Ron) husband the rest of my house & furniture except a few items.

---

[1] Two other handwritten documents of similar intent, entitled Will, were found in Deceased's papers.

Cecil Lee (brother) the rest of my life ins. After burial is pd.

Bertha Mae Cox (niece) mama's old sewing machine, pink wash bowl and pitcher (Xmas dishes), to Jo red ruby ring & diamond necklas[spelling?] ear rings.

Jo Gilliam (niece) all my gold chains, lg. Diamond ring & holder.

Kimberly Dalton (niece) white luggage, sewing machine, pink iron, glasses, stone dishes, & pink crystal. Paul Revere stainless ware, punch bowl, & lg. dimon[spelling?] ring & band.

David Lee (nephew) rocking chair, luggage, camester [spelling?] & grand ma Lee's quilt. Leslie Tinter (great niece) blue safire [spelling] rg.

Gary Vicars (gardner) $500.00.

I'll divide the rest of my clothes & jewelry. I want my house to keep in the family & don't change the way it's brick. Just keep it up.

Kathleen (Lee) Meade.

The construction of wills is a question of law for the court. *Presley v. Hanks,* 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989). The validity of a will is a question of fact, as determined from all the evidence, intrinsic or extrinsic, as to whether the testatrix intended the writing to operate as a will. Tenn. Code Ann. § 32-4-107(a); *In re Estate of Cook,* 2002 WL 1034016 at *2 (Tenn. Ct. App. 2002), *citing*, *Scott v. Atkins,* 314 S.W.2d 52, 56-56 (Tenn. Ct. App. 1957).

The authenticity of the document offered here is not in dispute. The question before the Court is whether the decedent did, in fact, intend the holograph to be a final expression of her wishes that resulted in the revocation of the earlier typewritten will. (Prior will may be revoked expressly "or by inconsistency". Tenn. Code Ann. § 32-1-201(1)), or, as concluded by the Trial Court, whether it was mere notes and memoranda of an intent to make a formal will in the future.

At the outset of our analysis, we note that it is immaterial whether a testatrix necessarily understands that by executing a particular document she is making a will, so long as the document demonstrates it was her clear intention to dispose of her property after her death, and the statutory formalities are satisfied. *Smith v. Smith,* 232 S.W.2d 338 (Tenn. Ct. App. 1949) at 341; *Carver v. Anthony,* 245 S.W.2d 422, 424 (Tenn. Ct. App. 1951).

A holographic will need not be dated or name an executor to be valid. *Nicley v. Nicley,* 276 S.W.2d 497, 500 (Tenn. Ct. App. 1954); *Pulley,* 137 S.W.2d at 340. The statutory requirements for a holographic will are that the document's provisions be entirely in the testator's handwriting, and authenticated by 2 witnesses. *Tenn. Code Ann. § 32-1-105.* In this case, the parties

have stipulated that the handwritten document is the decedent's handwriting and that the requirements of the statute are met.

When the statutory requirements are met, a holographic will is of the same dignity as a will attested by subscribing witnesses. *Campbell v. Henley,* 110 S.W.2d 329 (Tenn. 1937), and a properly proven holographic will supercede a formal will. *See, First Christian Church of Gurthrie, Kentucky v. Moneypenny,* 439 S.W.2d 620, 623 (Tenn. Ct. App. 1968). Testamentary intent "must be determined from what he has written and not from what it is supposed he intended." *Presley,* 782 S.W.2d at 488, *citing*, *Burdick v. Gillpin*, 325 S.W.2d 547, 551 (Tenn. 1959); *First American Nat'l Bank v. DeWitt,* 511 S.W.2d 698, 706 (Tenn. 1972).

> If the words of the will are plain and unambiguous the Court cannot, under the rules of construction, adopt a theory of some secret or reserved intention upon the part of the testator.
>
> . . . .
>
> It is true the intention of the testator is to prevail, as in all cases of the construction of will. But this intention can only be learned from the words used in the will. Indeed, it may appear morally certain that the testator may have in his mind intended a certain thing; but, unless he has expressed that intention either by writing it into his will in express terms or by necessary implication and construction, it can not prevail. The question is not what the testator intended in his mind, but what is the meaning of his words and his intention, as shown by them?
>
> . . . .
>
> The intention of the testator to be ascertain is not that which by inference may be presumed to have existed in his mind, but that which, but the words used in the will he has expressed.

*City of Memphis v. Union Planters Nat'l Bank & Trust Co.,* 208 S.W.2d 758, 764 (Tenn. Ct. App. 1947). *Also see, Richberg v. Robbins,* 228 S.W.2d 1019, 1022 (Tenn. Ct. App. 1950).

In this case, the Trial Court imputed a secret intention to the mind of the testatrix which was not expressed in the Will itself. He characterized the holograph as a deception to coax the Respondent to care for her. The Trial Court erred when it delved into the "unconscious" design of the testatrix, which is nowhere expressed in any of the testamentary instruments. Moreover, there was nothing in the record to support the inference. The image of the testatrix that arises from the testimony portrays a gentle, generous aunt and sister, who was beloved by family. The proof is uncontroverted that respondent was raised with her aunt all of her life and they were very close, much like sisters. Nothing in the record suggests she took care of decedent grudgingly or needed to be bribed.

Even if the Trial Court's analysis were appropriate, such intent ascribed to the testatrix would not destroy the Will's validity:

> The law justly regards with peculiar tenderness the wills of the aged. The power to dispose of their property by will is often the only means which they possess of securing that attention and care for which they appeal in vain to human and natural affection. It then becomes the sole remaining staff of their declining years.

*Pritchard on Wills and Administration of Estates,* 5th ed., § 121, *citing*, *Van Huss v. Rainbolt,* 42 Tenn. 139 (Tenn.1865).

The Trial Court's reference to the testatrix's prior Will prepared by an attorney in evaluating the holographic Will, was inappropriate. Whether a document meets the criteria for a testamentary instrument is derived from the document itself. The Trial Court cited as "very strong circumstantial evidence" that the decedent would have couched the language in more attorney-like terms, because she was a meticulous "business type" person, and in this context appellee argues that the decedent was a "business person" and "meticulous" and quite scrupulous in her affairs, and she would not have written a holograph but would have engaged legal counsel.

The evidence establishes the testatrix was a factory worker at Tennessee Eastman for 45 years and had an 8th grade education, and she did draft the document at issue without the benefit of counsel. Her concern about it's validity was exhibited by her asking her great niece more than once if she thought the handwritten Will would be ok, and her great niece assured her that it was fine. While the holograph does not explicitly revoke the prior Will, decedent took several concrete actions that demonstrate revocation of the first Will. She wrote the second will and signed it and titled it a Will. She changed her life insurance beneficiary consistent with the second Will. She showed other persons where the Will was located, an act that would be unlikely if it were merely a draft or notes of future plans without present testamentary intent. She gave away some items consistent with the document's provisions before she died. There is no evidence that she stated she intended to make a will in the future or was just thinking about it. The evidence clearly preponderates that the handwritten will embodies the decedent's final wishes.

Finally, the widely disparate versions presented in evidence are reconcilable by noting that Petitioner's witnesses in large part testified to conversations with testatrix prior to or around the execution of the first Will. The record reveals that relatively little evidence more proximate to the testatrix' death supports the typewritten Will. Respondent's witnesses testified to testatrix' declarations that were uttered much closer to her death. In other words, the Trial Court's finding that all the witnesses were credible can be justified because the differing versions presented by the parties are not mutually exclusive, i.e., decedent did, at one time, have a typewritten will favoring the petitioner. Noting the sequencing of the conversations as related by the witnesses it can be seen that as time went on and testatrix became more ill, she changed her mind and took definite steps to implement that change. Of significance, Arlene Bear, who had no knowledge of the Will, was the only witness with no interest in the estate, and testified that a week before testatrix died, she told

Bear that she wanted Gilliam to have her property, if she wasn't put in a nursing home.

For the foregoing reasons, we conclude that the handwritten Will was the Last Will and Testament of deceased, reverse the Judgment of the Trial Court, and remand, with the cost of the appeal assessed to the Estate of Kathleen Lee Meade.

_____
HERSCHEL PICKENS FRANKS, P.J.