IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 19, 2017 Session

**IN RE ESTATE OF ANDREW THOMAS PEERY, JR.**

**Appeal from the General Sessions Court for Blount County**
**No. P-01934          Michael A. Gallegos, Judge**

_____

**No. E2017-00603-COA-R3-CV**

_____

The brother of a decedent filed a petition to admit to probate a purported holographic will. The decedent's widow protested. After a hearing, the trial court ruled that the document was not a holographic will and that the decedent had died intestate. The brother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

J. Lewis Kinnard, Madisonville, Tennessee, for the appellant, John Wayne Peery.

John M. Jackson, III, Maryville, Tennessee, for the appellee, Martha Peery.

**OPINION**

**I. BACKGROUND**

Andrew Thomas Peery, Jr. ("the Decedent" or "Tom"), died on January 17, 2016. A brother, John Wayne Peery ("Wayne") filed a petition to admit to probate a purported holographic will of the Decedent's. The Decedent's widow objected, and this action resulted.

The case was tried on November 1, 2016. Wayne testified that he owns half of the real property at issue, which is the site of the old family home place. The other half was owned by the Decedent. The total size of the property is approximately 332 acres.

Regarding the purported holographic will, Wayne, his brother Glen Peery, and Wayne's son, John Peery, all members of the family farming business, testified at trial that Tom had delivered the document to Wayne in 1992[1] shortly after it was prepared and that the handwriting was that of the Decedent. Wayne noted that he had retained the document for 24 years until after the Decedent's death. The document relates as follows:

> Nov. 13, 1992
>
> After my death I A.T. (Tom) Perry, Jr. give to Wayne Peery or his son John Peery an option too (sic) buy my share of the Farm located in the 12 District of Blount County for the Price of one dollar. The reason I have done this, he has never charged me any rent on his share of the Farm and has helped me in other ways. So I feel he should have my share of the Place.
>
> /s/ A.T. (Tom) Peery. Jr.

The document was notarized by a notary public.

Martha Peery, the widow of the Decedent ("Widow"), challenged the document proffered by Wayne, asserting that it lacked testamentary intent, failed to meet basic requirements of a will, and inadequately described the property that is the subject of the document. As to the purported will, Widow related that she had never seen it until Wayne showed it to her after Tom's death. She acknowledged that she had asked the Decedent several times to make a will. Widow noted, however, that Tom never told her that he had a will made and would say, "I'm going to." She testified as follows:

> Q: Based on your discussions with your husband, do you believe he thought that he had a Will?
>
> A: No. No, I don't.

Widow testified that she and Tom were married in 1976 and had no children of their own.[2] She asserted her familiarity with Tom's business dealings and affairs, noting the following assets: stock in Regions Bank, a savings account at First Tennessee Bank, a savings account at Citizens Bank, an IRA at Regions Bank, and stock at Farm Bureau Insurance Company. According to Widow, the Decedent owned a residence with her at the time of his death.[3] There was additional proof offered that Tom was the owner of a

---

[1] Tom was married at the time.
[2] Widow noted that she has three daughters by a previous marriage.
[3] The residence and the land on which it sits are not part of the property at issue.

share of a 300-plus acre farm in Monroe County. The Decedent also owned machinery, equipment, and trucks that were used in the farming business.

Widow presented two documents at trial that she located, not in the box by the living room chair where Tom kept his important documents, but in an old horse trailer in a barn. The writings both appear to be dated January 1, 1997, and contain the following language: "I hereby make and Declare this as and for my last will and testament." Item 1 of both documents declares specific bequests of both real and personal property. The two documents are different, but they both attempt to devise and bequeath the Decedent's interest in the marital residence, stocks, checking and savings accounts, interest in property in Monroe County, cattle, pickup trucks, and other machinery. Both instruments appoint Widow as executor of the will and direct that she serve without bond. As to the Blount County property, both documents indicate that the Decedent struck out references to Wayne. On the second writing in particular, the Decedent noted as follows:

> I give ~~Wayne Peery~~ or John Peery my Interest in the Home Place except what is fenced in with my house and Direct that they Deed to my Wife Martha, Wayne's Interest in that amount around the house. If they Refuse to Deed this then Martha will get 1/2 of my interest in the Home Place and ~~Wayne~~ or John will get 1/2 of my interest in the Home Place.

On the face of both documents the word "Void" appears written in multiple places. Accordingly, these instruments were not introduced as being the will of the Decedent. Rather, they were proffered to reflect both that the Decedent knew how to formally make a holographic will, and that in January 1997, a little over four years after the date the instrument was given to Wayne, Tom apparently believed that he still needed to create a will. The parties agree these documents are in the handwriting of the Decedent.

Wayne did not provide further evidence as to testamentary intent of Tom. He presented no proof regarding why the purported holographic will was silent as to all other property, accounts, equipment, machinery, stocks, and trucks of the Decedent or why Widow was not mentioned in any capacity. However, Wayne did argue that Tom knew the assets Widow would receive upon his death and that he desired for the home place property to remain in the family.

The trial court held that Wayne's document was not the Decedent's last will and testament and determined that Tom had died intestate. The court observed at the hearing that "in 1997, I pick up on some evidence that [Tom]'s still unclear of the disposition of this property. . . . I think all the other surrounding evidence that's been admitted here today points to the fact that he did not intend on this being his Last Will and Testament as it pertains to this piece of property." Accordingly, the trial court found that by statute, the share of the property at issue passed to the Decedent's sole heir, Widow. The court

denied Wayne's motion to alter or amend. This appeal followed.

## II. ISSUE

The sole issue raised by Wayne is whether the trial court erred in failing to find the document at issue to be the last will and testament of the Decedent.

## III. STANDARD OF REVIEW

In a non-jury case, we will "review the record de novo with a presumption of correctness as to the trial court's determination of facts." *In re Estate of Price*, 273 S.W.3d 113, 119 (Tenn. Ct. App. 2008) (citing Tenn. R. Civ. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912, 915 (Tenn. 1999). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.,* 58 S.W.3d 706, 710 (Tenn. 2001).

## IV. ARGUMENT

There are few formal requirements for the execution of a handwritten testamentary instrument. *Smith v. Smith*, 232 S.W.2d 338, 341 (Tenn. Ct. App. 1949). The statutory requirements demand only that "the signature and all its material provisions must be in the handwriting of the testator and the testator's handwriting must be proved by two (2) witnesses." Tenn. Code Ann. § 32-1-105. However, testamentary intent, or *animus testandi* remains a necessity; without it there is no valid will. *Smith*, 232 S.W.2d at 341; *Davidson v. Gilbreath*, 273 S.W.2d 717 (Tenn. Ct. App. 1957). Even if the instrument in question meets all the statutory requirements as to form, there must be sufficient proof of intent; otherwise, the writing cannot be accepted as a testamentary instrument. *Scott v. Adkins*, 314 S.W.2d 52, 56-57 (Tenn. Ct. App. 1957). This testamentary intent must be "proven in a manner which conforms to applicable rules of evidence and procedure." *See Smith*, 232 S.W.2d at 341. As articulated in *Smith*, "[i]f the *animus testandi* be doubtful, all the facts or circumstances may be looked to, and it is for the jury to determine from all the evidence, intrinsic or extrinsic, whether or not the testator intended the instrument to operate as his will." *Id.,* at 341-342.

In the *Smith* case, the document was much more formal and similar to a will than the document before us. The document was in the decedent's handwriting, it was titled

- 4 -

"Last Will and Testament," and it was signed and dated. The *Smith* court noted, however, that there were inferences created by the evidence that raised concerns. For example, the document "was not discovered among the valuable papers of the decedent, but under circumstances that 'negatived' the idea that [the decedent] regarded it as being of any value or intended it to be effective as a disposition of his property." *Id.* In addition, the "informality" of the document, shown by the type of paper used and the fact that it was written in pencil with abbreviations, interlineations, erasures, syntax errors, and so on supported the view that the decedent did not consider the document to be a final will. *Id.* Based upon this evidence, the *Smith* court concluded that there was a conflict in the evidentiary inferences to be drawn and held that resolution of the issue of whether there was *animus testandi* was for the trier of fact. *Id.* The *Smith* court ultimately determined that the document lacked testamentary intent and that the decedent did not regard the document as one he intended to operate as a will. *Id.*

In *In re Estate of Blackburn,* a holographic will was proffered that stated, "Freddy can do whatever he wants to with everything after I pass." 253 S.W.3d 603, 615 (Tenn. Ct. App. 2007). The issue before the *Blackburn* court was whether material evidence supported the conclusion that the decedent did not possess the requisite testamentary intent when he signed the document. *Id.* at 615. The court observed that in assessing testamentary intent, "it is immaterial whether a [testator] necessarily understands that by executing a particular document [he] is making a will, so long as the document demonstrates it was [his] clear intention to dispose of [his] property after [his] death. . . ." *Id.* (citing *In re Meade,* 156 S.W.3d 841, 843-44 (Tenn. Ct. App. 2004)). The *Blackburn* court concluded that material evidence supported a finding that the decedent lacked the necessary testamentary intent and that, therefore, the document was not a valid holographic will. *Id.* According to the court, the circumstances surrounding the decedent's execution of the document did not indicate testamentary intent. None of the witnesses present when the decedent wrote and signed the document testified that the decedent explicitly told them that he intended this document to be his will. Testamentary intent, the court noted, must be determined "from what [the testator] has written and not from what it is supposed he intended." *Id.* (citing *In re Meade,* 156 S.W.3d at 844 (quoting *Presley v. Hanks,* 782 S.W.2d 482, 488 (Tenn. Ct. App. 1989)). The *Blackburn* court held that no valid holographic will was created because: (1) "document has no heading, (2) [it] does not state that it is a last will and testament, and (3) [it] does not define the 'everything' to which it refers. . . ." and (4) "there is little evidence to suggest that the [d]ecedent ever represented the document to be his formal last will and testament to anyone." *Id.* at 614-16. Thus, despite the fact that the formal requirements of a holographic will were satisfied, the court found the trier of fact was justified in finding that the reasons listed above demonstrated a lack of testamentary intent.

Upon review of the document of record, it does not identify the "farm" more specifically than the district in which it is located. Further, it does not devise any fee interest or dispose of the property; rather, it creates an option. The two voided

instruments presented by Widow both specify that they are Tom's will and explicitly state that he does hereby "give, devise, and bequeath" all of his property. Therefore, proof before us demonstrates that Tom knew how to draft a document that effectively disposed of all of his property after his death if he was inclined to do so. Furthermore, this evidence reveals that as of January 1, 1997, Tom did not believe that he had a will.

In the instant case, the record reflects that there was sufficient proof for the trier of fact to determine that the evidence preponderated in favor of its finding that the requisite testamentary intent did not accompany the preparation and execution of the document at issue. More is required than simply asserting proof that the document was in Tom's handwriting and signed, a fact never disputed by Widow in this case. Absent a clear showing of testamentary intent, the writing must fail as a testamentary document.

Based on the record before this court, the evidence does not preponderate against the trial court's finding that the document is not the last will and testament of the Decedent. Accordingly, the trial court's ruling is affirmed that the property of the intestate Decedent vested immediately upon the death of the Decedent in Widow. *See* Tenn. Code Ann. § 31-2-103. As there was no document introduced by any party which actually devised, bequeathed, or disposed of a fee interest in the property at issue, the property transferred by intestacy immediately upon the death of the Decedent, leaving no property against which to exercise the option.

## V. CONCLUSION

The judgment of the trial court is affirmed and this cause is remanded to the trial court for collection of the costs below. The costs on appeal are assessed against the appellant, John Wayne Peery.

_____
JOHN W. MCCLARTY, JUDGE