# CITY OF MEMPHIS v. UNION PLANTERS NAT. BANK & TRUST CO. et al.—208 S. W. (2d) 758.

Western Section.   September 12, 1947.

Petition for Certiorari denied by Supreme Court, January 16, 1948.

W. W. Hughes, R. H. Stickley, Clarence Clifton, C. C. Gillespie, Lucius Burch, H. H. Honnoll, Lee Winchester, Hanover & Hanover, George Randolph, B. J. Semmes, C. C. Crabtree, A. A. Latting, F. M. Duke, Jr., and T. C. Farnsworth, all of Memphis, for appellant.

S. W. Polk, K. C. Larkey, and Frank B. Gianotti, all of Memphis, for appellees.

BAPTIST, J.   The suit was instituted in the Chancery Court of Shelby County, Tennessee, by the City of Memphis Tennessee, for the purpose of having adjudicated, under the Declaratory Judgments Act, its rights and status under the will of Alba C. Lake, deceased, and seeking a construction of the will, as to the complainant's rights and obligations thereunder.

The will in question was executed by the said Alba C. Lake, a resident of Memphis, Tennessee, on August 5, 1918.   Mr. Lake died on June 27, 1922.

After probate of the will and administration of the estate, the assets came into the custody of the Union Planters National Bank & Trust Company as trustee, and these assets now held by the trustee amount to approximately $280,000.

The opening paragraph of the will provides:

"In the event of my death I wish my estate to be held intact, During their lifetime the entire net income therefrom is to be divided equally among the following five legatees, viz: Lorenzo S. Lake, Mary A. Lake, Byron G. Lake and Louise Lake Bradford and Ernest B. Lake, as each dies his or her share is to be divided equally among the still living.   So that the last one living will get the entire income after all the rest are dead.   If Lorenzo S. Lake should die before his wife, Irene Kibbe Lake she is to receive monthly one half of what he received monthly while living as long as she lives provided she remains unmarried.   The remaining half going to my heretofore named legatees as also her one half if she should die or forfeit it before they all die, when

they are all dead the following if still alive or in existence shall each receive, paid into their own hands, and not to be their property until so paid so as not to be subject to any debts they may owe the amount bequeathed to each of them.''

There then follow bequests in different amounts to twenty named or described individuals and eight named or described institutions.

It is provided that if there is more than enough to pay the bequests the remainder of the testator's estate up to $100,000 is to go to the Second Presbyterian Church of Memphis, charged with the payment out of the income from same the provision for Mrs. Irene Kibbe Lake.

It is provided that if any of the first named five legatees above mentioned should die leaving child or children born or to be born, such child or children is to be paid $100 per month each as long as it or they may live.

The residuary clause of the will, which is in question here, is as follows:

''If there is over this $100,000.00 (One Hundred Thousand Dollars), the remainder must be applied by the City of Memphis Tenn. to the purchase of the Vance Woods of 150 acres more or less, belonging to the New South Memphis Land Co. which are to be a public city park forever under the name of Lake-Woods. And if Elmwood should ever cease to be a cemetery I wish the Lake Monument and graves now in the Lake lot on Chapel Hill removed to said Lake Woods. Should this purchase not be made and paid for within three years from the date of the death of the last one of my first five above mentioned legatees then the money shall go to the above mentioned Second Presbyterian Church, out of which must be paid off any trust deed or mortgage that may be in

existence at the time of my death on the above mentioned Home of the Incurables. If the city of Memphis should buy and pay for the Vance Woods within the three years and there should be any money remaining this remainder may be used in building an Auditorium or towards paying off the balance due for any Auditorium that may have been built.''

A codicil provides that: ''If the money is not needed, for an Auditorium it may be used in improving the park.''

Three of the first named five legatees, Lorenzo S. Lake, Byron Lake and Mary A. Lake, are now dead, leaving no children.

Ernest B. Lake, about 63 years of age, and Louise Lake Bradford about 61 years of age are still living, both without children.

Other than the five first named legatees, more than half of the individuals to whom bequests were made are dead and one of the institutions is nonexistent.

The original bill alleges that the tract of land referred to in the will as ''Vance Woods'' originally comprised about 171 acres, but that at the time the will of the said Alba C. Lake was executed, Florida Street had intersected same, cutting off approximately 20.79 acres of same located west of Florida Street and leaving approximately 150 acres in the main wooded tract; that the original tract is now tri-sected by Florida Street in the western part thereof and U. S. Highway 61 in the eastern part thereof, leaving a tract of approximately 20.79 acres west of Florida Street, a tract of 31.21 acres east of Highway 61 and a tract of 119.89 acres between Florida Street and Highway 61.

That as a result of the tri-secting of said land, it may not be feasible or desirable ever to use the 20.79 acres

west of Florida Street, or the 31.21 acres east of Highway 61 for park purposes, because of the difficulty and probable impossibility of making either of said tracts integral parts of a park, consisting of the large tract between the said two streets or highway consisting of 119.89 acres.

It is alleged that the proper construction of the residuary clause of the will is that the complainant, City of Memphis, may lawfully comply with the provisions of the will and entitle itself to said residuum of said estate by purchasing only the tract lying between Florida Street and Highway 61, or such part of said original tract as it may deem in its discretion to be suitable or desirable for park purposes.

The trustee, Union Planters National Bank & Trust Company, in answer joins issue on the last above proposition and asserts that the testamentary intention was that the area to be acquired in said Vance Woods for conversion into a park would contain 150 acres more or less.

The trustee also filed a cross-bill, to which it made defendants, The City of Memphis and the numerous individuals and institutions who might have any interests or rights under the terms of the will. The purpose of the cross-bill was to have an interpretation and construction of the entire will as to the interests and rights of all the parties who might have such interests and rights thereunder.

The decree of the Chancellor adjudicates the rights and interests of all the parties except as to the provision of the will for the payment of $100 per month to any children which should be born to the first five named legatees. This question was pretermitted and the cause

retained in Court for a decision in case of the future birth of such child or children. From the decree there was no appeal by any of the parties except as hereinafter stated.

In construing the residuary clause in favor of the City of Memphis the decree provides:

"VIII. None of the provisions of said will will preclude the right of the City of Memphis to purchase Vance Woods and to pay for same out of its own funds at any time prior to the expiration of three years from and after the death of the last survivor of Ernest B. Lake and Louise Lake Syers. If the City of Memphis, during the continuance of the trust, or at any time prior to the end of the said three year period, shall purchase and pay for said land, it shall receive the residuum of the trust assets remaining after the satisfaction of the bequest to the Second Presbyterian Church. But the City of Memphis shall not be entitled to receive the residuum of the estate, or to have the benefit thereof, if it omits to make said purchase and payment, or to contract for such purchase as hereinafter provided, until after the expiration of three years from and after the date of death of the last survivor of the persons above named.

"IX. The condition annexed to the testamentary gift to the City of Memphis of the testator's residuary estate, so far as it embodies the requirement that a certain designated property be acquired for use as a public city park, is a condition precedent.

"The testator intended, at the time he made his will, that the City of Memphis, in order to qualify for the reception of said residuary gift should, within the time limited by the will, purchase and pay for the tract of approximately 150 acres, lying east of Florida Street in Shelby County, Tennessee, known as Vance Woods and

described in the will as "The Vance Woods of 150 acres, more or less, belonging to the new South Memphis Land Company" if all of said tract should be available for the creation of a park at the time of the death of the last survivor of the five (5) life beneficiaries under the will, the testator having contemplated necessarily the possibility that unforeseen circumstances subsequently arising might render it impracticable to employ the entire area of said Vance Woods for the creation of a park. The Court finds that the dominant purpose of the testator in providing the said residuary bequest to the City of Memphis was to create a public park of substantial proportion for the benefit of the citizens of Memphis, and at the same time to create a perpetual memorial to the testator by naming the said park 'Lake Woods'; and that it was not the intention of the testator that his bequest should result in multiple parks, or that the City should be bound to purchase the exact acreage mentioned.

"The Court further finds that in the years 1935-1936 State Highway No. 14, extending south from the City of Memphis was constructed, and that its course passed through Vance Woods, separating the tract of approximately 150 acres lying east of Florida Street into two parts, 31.21 acres of which is east of said highway and 119.89 acres of which lies between said Highway No. 14 and Florida Street; and finds that in the opinion of the authorized officials of the City of Memphis in the exercise of their discretion, which is controlling so far as this Court is concerned, it is impracticable to employ or combine the area of these two tracts of 119.89 acres and 31.21 acres as a single park, because the same are separated by a four lane concrete, much traveled highway,

over which a large part of the traffic between the City of Memphis and the State of Mississippi travels.

"The Court is of the opinion that substantial performance of the conditions imposed upon the City of Memphis by the will of the testator is sufficient to entitle said City to the said bequest, and it is of the further opinion, and accordingly holds, that the acquisition by the City of Memphis of that portion of Vance Woods between Florida Street and State Highway No. 14, containing 119.89 acres for use as a public park under the name of 'Lake Woods' will constitute a substantial and sufficient compliance with the terms of the will and sufficient and substantial performance of the condition annexed to the gift, so as to entitle the City of Memphis to demand and receive the residuary properties remaining in the trust estate after satisfaction of all other legacies properly and lawfully payable at the termination of the trust.

"If either before or after the death of the last survivor of Ernest B. Lake and Louise Lake Syers, but prior to the end of three years after the death of said last survivor, the City of Memphis shall have entered into a binding contract for the purchase of such part of Vance Woods as will comply with the conditions of said will, as hereinafter construed and determined, and if such contract is in effect at the death of said last survivor or within three years therefrom, the City of Memphis will be deemed to have qualified for the reception of said residuary bequest, though it may not have paid for said land prior to or within the said three year period, and it may call upon the Trustee to pay for the said land within the said three year period, to the extent of the residuum in the hands of the Trustee; and in such event, payment for the said land by the Trustee upon the order of the

properly authorized officials of the City of Memphis shall be a complete acquittance to the trustee for the sums so paid for said land. If there shall be more than enough money to pay for said land the Trustee shall pay such over-plus to the said City for the uses and purposes authorized and directed by the Will, but will have no responsibility to see to the proper application thereof by the City.''

From this decree the trustee has prayed an appeal and assigned errors.

The evidence consists of the depositions of certain officials of the City of Memphis.

Curtis J. Turner, Superintendent of Maintenance and Construction of the Memphis Park Commission, testified that in his opinion the three tracts containing respectively 20.79 acres, 119.89 acres and 31.21 acres are not suitable for combination into one park and that the two tracts of 119.89 and 31.21 acres are not suitable for a combination into one park; that Highway No. 61 which divides the last two mentioned tracts is a four lane highway at that point, carrying unusually heavy traffic; that for the park to be used as a combination of these two tracts it would be necessary to have either an overhead or underground pass from one parcel to the other, and that it would be dangerous as a traffic hazard with the highway running through it; that each area would have to be fenced off from the other; that a park is needed in that part of the City and that the center area is beautiful and desirable for such use; that the entire area comprised in the three tracts heretofore mentioned has always been known, since he was grown, as Vance Woods; that it is not impossible, but not desirable to use for park purposes land through which traffic passes; that

Memphis has several parks bordered by streets and that there are driveways through Riverside and Overton Park and that a street railway runs through the latter and which is not fenced off; that the area of 31.21 acres could be used for a small playground.

John J. Vesey, Chairman of the Park Commission, testified that he was familiar with the land comprising Vance Woods and gave as his opinion that the three tracts of 20.79, 119.89 and 31.21 acres are not susceptible of development as one park and that it is not practicable to use the 31.21 acres as a park; that he would not want either of the two lesser areas for park purposes; that he has known Vance Woods for many years and that the three tracts all together make up in popular conception what is known as Vance Woods, and such was the situation in 1918 when Mr. Lake made his will; that the City would like to acquire the center tract, but not the other two side pieces.

W. B. Fowler, City Engineer of Memphis, testified that Florida Street was at its present location as early as 1907, and that State Highway No. 14, which is U. S. Highway No. 61, a four lane highway, was completed in 1935 or early in 1936; that it was established by the State Highway Department and that the City had no control over it.

The first assignment of error is as follows:

"I. The determination by the court in its decree that the intention of the testator at the time he made his will, viz., that the City of Memphis should receive the residuum of his estate upon the condition that, within the time limited by the Will, the City should purchase and pay for the property designated as 'the Vance Woods of 150 acres more or less,' included, as a part of the testamen-

tary intention, these qualifications of the state conditions, to-wit:

"(a) That all of the property should be purchased only 'if all of said tract should be available for the creation of a park at the time of the death of the last survivor of the named life beneficiaries under the Will';

"(b) That the testator 'contemplated necessarily the possibility that unforeseen circumstances subsequently arising might render it impracticable to employ the entire area of said Vance Woods for the creation of a park';

"(c) That 'it was not the intention of the testator that his bequest should result in multiple parks,' and that it is impracticable to combine the two areas of 119.89 acres and 31.21 acres into a single park; and

"(d) That the testator did not intend that the City should be bound to purchase the exact acreage mentioned, and that the purchase by the City of 119.89 acres of Vance Woods for park purposes will be sufficient and substantial compliance with the condition imposed by the testator, so as to entitle it to receive the bequest."

The condition attached, in the residuary clause of the will, is that if the City of Memphis desires to take advantage of the bequest it must acquire "the Vance Woods of 150 acres more or less."

The first inquiry arising is what property was the testator describing in the description given.

As heretofore stated Vance Woods originally consisted of about 171 acres. At the time of the execution of the will in 1918, Florida Street intersected the tract on the west side separating 20.79 acres, leaving remaining approximately 150 acres east of that street. This was the situation in 1918 and in 1922 at the time of the

death of Mr. Lake. It so remained until State Highway 14 (U. S. Highway 61) was built in 1935-1936. This separates 31.21 acres on the east side, leaving between Florida Street and Highway 61, 119.89 acres.

The contention of the trustee is that the residuary clause of the will requires the City to acquire that portion of the property east of Florida Street containing approximately 150 acres. This contention is based upon the fact that Florida Street had been constructed prior to the date of the will—probably as early as 1907. That presumably the testator knew of that situation and made his will in the light of existing conditions, and that it is reasonable to assume he had it in mind when he made his will in 1918. It is insisted that these facts, together with his use of the definitive article "the" in his description of "the Vance Woods of 150 acres more or less" demonstrates his intention at that time that all of the property lying east of Florida Street to its extreme eastern boundary should be acquired.

There is no need for citation of authorities as to the rule to be followed by the Court in its interpretation and construction of the will in question. The duty of the Court is to ascertain from a consideration of the whole will the intention of the testator and this intention must be found in the will itself. As said in Sizer's Pritchard Law of Wills, Sec. 384:

"The rule that the intention shall prevail is grounded in the nature and purpose of construction by the courts; that is, to so construe a writing authorized by law to be made, which purports to be a disposition of the property of the testator, that it will accomplish what he wills to do. This will or intention must of necessity control, unless it contravene some rule of law or public policy.

Although our books, and especially the older ones, are filled with precedents prescribing rules, often of an arbitrary character, for ascertaining the meaning of the testator, the practical common sense of more modern decisions, both in this country and in England, has reached the conclusion stated by Lord Selborne, that there can be nothing more certain than that every will is to be construed by itself and not by the wills of other testators; and all the light that can be got from other decisions serves only to show in what manner the principles of reasonable construction have been applied by judges of high authority in cases more or less similar. It is rarely necessary, and seldom beneficial, to go over the precedents on the question of the meaning of testators in other wills. The intention of the testator whose will is under construction is what the court seeks to ascertain, and that is to be gathered from the language he has used. It is not the duty of the court to search for any meaning otherwise than by fairly interpreting the language of will. The use of the expression that the intention of the testator is to be the guide, unaccompanied by the constant explanation that it is to be sought in his words, and a rigorous attention to them, is apt to lead the mind insensibly to speculate upon what the testator may be supposed to have intended to do, instead of strictly attending to the true question, which is, what that which he has written means.''

Evidently the will in question was drawn by Mr. Lake himself. Neither in phraseology nor otherwise does it bear the earmarks of a lawyer's draughtsmanship.

Evidently Mr. Lake was a careful and successful businessman, having accumulated a large estate. Illustrating this quality, the witness, Fowler, the City En-

gineer says: "He was careful whatever he said or did. I never knew him to throw away anything, not even a word. If he said 150 acres he meant 150 acres".

There is no ambiguity in the will, either patent or latent. There is no uncertainty in the language used. There is nothing in the will, preceding or following the residuary clause, which throws any light on the testator's intentions as to the residuary clause.

At the time of the execution of the will in 1918, Florida Street intersected the original tract, leaving approximately 150 acres eastwardly from that street. This situation had been in existence ten years or more prior to the execution of the will. The testator is presumed to have known of that fact and made his will in the light of that situation.

In view of that situation and from the language of the will itself we have no difficulty in finding the testator's intention. The intention was that, as a condition precedent to the gift, the City was required to acquire that part of the tract lying eastwardly of Florida Street of approximately 150 acres.

If a construction of the will in question had been sought immediately after the death of Mr. Lake, as might have been done, we think the testator's intention would have been construed as above stated.

If such was the testator's intention at the time of the execution of the will, no subsequent change in conditions can alter that intention.

The situation is the same as it was at the time of the execution of the will except for the construction of Highway 61. The City contends that this construction renders it impracticable to employ the entire area of Vance Woods for the creation of a park.

The Chancellor held that the testator necessarily must have contemplated the possibility that unforseen circumstances subsequently arising might bring about such a condition, and that the testator intended at the time he made his will, that the City of Memphis should purchase the tract of 150 acres "if all of the tract should be available for the creation of a park".

There are no words in the will which indicate any such contemplation or intention.

The question before the Court is not what the testator may have contemplated, or what future events he may have anticipated, but what his intention was as expressed in the words of the will.

If the words of the will are plain and unambiguous the Court cannot, under the rules of construction, adopt a theory of some secret or reserved intention upon the part of the testator.

As said in Fox and Wheatley v. Fox, 102 Tenn. 77, 50 S. W. 765, 767:

"It is true the intention of the testator is to prevail, as in all cases of the construction of wills. But this intention can only be learned from the words used in the will. Indeed, it may appear morally certain that the testator may have in his mind intended a certain thing; but, unless he has expressed that intention either by writing it into his will in express terms or by necessary implication and construction, it can not prevail. The question is not what the testator intended in his mind, but what is the meaning of his words and his intention, as shown by them?"

The defendant's brief cites the following authorities which are in accord with the rule as stated by the Supreme Court of this State:

"The intention of the testator to be ascertained is not that which by inference may be presumed to have existed in his mind, but that which, by the words used in the will he has expressed." McCormick v. Hall, 337 Ill. 232, 168 N. E. 900, 903, 66 A. L. R. 1062.

"The will must be construed upon conditions as then existing and not upon a theory that it would have been different if present conditions could have been foreseen." Spencer v. Title Guarantee Co., 222 Ala. 485, 132 So. 730, 732.

"The rule of construction is that the Court is not entitled to consider what the testator intended so as to justify writing a will which the Court thinks the testator should have written, but the intention must be ascertained from the language used." McCulloch v. Yost, Ohio App., 70 N. E. (2d), 463, 464.

The evidence of the witnesses introduced by the City throws no light on the question here at issue—the intention of the testator as found in the words of his will.

The purpose of the testimony is to show that it is not feasible, practical or advisable for the City to purchase for park purposes any part of Vance Woods except the area of 119.89 acres situated in the center of the tract, by reason of the construction of Highway 61 through Vance Woods.

The contention of the City is that the dominant purpose of Mr. Lake in the bequest of the residue of his estate was to establish a perpetual memorial to himself and the members of his family in the nature of a park to be used and enjoyed by the citizens of Memphis, and that the language of the will indicates that he was not particularly interested in the area to be purchased.

There are no words in the will indicating a lack of interest upon the part of Mr. Lake as to the area to be used for park purposes. He conditioned the City's right to the bequest upon its purchase of Vance Woods consisting of 150 acres more or less for use as a public park. There are no qualifying terms. He left no discretion with the City as to the area to be purchased. He did not indicate that the purchase of a part of the area would suffice if the City found it not feasible or practical to purchase the area described in his will.

To uphold the City's contention in this respect, the Court must impart to the will qualifying terms and an intention upon the part of the testator not found in the words thereof.

The City contends that only substantial performance of the condition is required and that substantial performance is effected by the acquisition of that part of Vance Woods which the City deems practicable and feasible for park purposes.

We are unable to sustain this contention. We are of the opinion that the condition must be strictly complied with.

"A condition precedent must be strictly, literally and fully performed before title will vest in the devisee or legatee, unless the clear intent of the testator was to pass title on substantial performance. In this respect, equity ordinarily follows the law; but, if there is no limitation over, such a performance as will substantially fulfill the testator's intention is, in equity, sufficient when adequate reason appears for lack of strict performance." 69 Corpus Juris, Wills, Sec. 1796, p. 681.

In the will in question there is a limitation over to the Second Presbyterian Church upon failure of the City to comply with the condition.

We are of the opinion that the Chancellor was in error in holding that the purchase by the City of 119.89 acres of Vance Woods for park purposes would be a sufficient compliance with the condition imposed by the testator, so as to entitle it to receive the bequest.

For that reason the first assignment of error is sustained.

The second assignment of error is as follows:

"The ruling of the court that it is not necessary, in order to comply with the condition expressed in the will, that the City of Memphis purchase and pay for the land which is to be acquired for park purposes, but that sufficient compliance to entitle it to the gift will have been made if it shall have entered into a binding contract for the purchase thereof and such contract is in full force at, or within three years after, the death of the last survivor of the life tenants."

This assignment is leveled at that part of the Chancellor's decree as follows:

"If . . . prior to the end of three years after the death of the last survivor the City of Memphis shall have entered into a binding contract for the purchase of such part of Vance Woods as will comply with the conditions of the said will as hereinafter construed and determined, and if such contract is in effect at the death of the last survivor, or within three years therefrom, the City of Memphis will be deemed to have qualified for the reception of the said residuary bequest, though it may not have paid for the said land prior to or within the said three year period, and it may call upon the Trustee to pay for the said land within the said three year period to the extent of the residuum in the hands of the Trustee; and in such event payment for the said

land by the Trustee upon the order of the properly authorized officials of the City of Memphis shall be complete acquittance to the Trustee for the sums so paid for said land.''

The contention is that before the trustee is authorized to pay over the funds under the terms of the bequest, the City must have bought and paid for the property with its own funds, thus giving the trustees evidence of its compliance.

We do not think this contention can be maintained under the language of the will.

The first statement in the residuary clause is ''the remainder must be applied by the City of Memphis, Tennessee to purchase Vance Woods of 150 acres more or less.''

We think the testator intended that at the end of the trust term, or within three years therefrom, the City had purchased the property, the trustee should pay for the property to the extent of the residuum of the estate.

It is also provided that: ''If the City of Memphis should buy and pay for the Vance Woods within three years'' etc., directing the application of any overplus, to building an auditorium, etc.

We think the decree of the Chancellor provides a reasonable and substantial compliance with the provisions of the will as to the purchase and payment of the property.

For that reason the second assignment of error is overruled.

The defendants, Harriet Margaret Austin, Mrs. Rosa Kabakoff, Dr. Lillian Kabakoff, and Mrs. Sophie Alper have appealed and assigned error on the action of the

court in holding that the bequests to Fowler Austin and Samuel Kabakoff were contingent and not vested.

We have heretofore quoted the opening clause of the will, which, after providing for the first five named legatees provided, "when they are all dead the following if still alive or in existence shall each receive," etc. Among those following are Fowler Austin and Samuel Kabakoff, both of whom are dead.

The contention is that at the time of the death of the testator the said Fowler Austin and Samuel Kabakoff became vested with the bequests; that the presumption is that the interest vests at the death of the testator, which presumption yields only to a manifest contrary intention found in the will.

The very plain language of the will "if still alive" manifests such the contrary intention and that the bequests were contingent and not vested.

The assignment of error is overruled.

The action of the Chancery Court in the respects indicated is reversed and the cause is remanded to that Court for proceedings there consistent with this opinion.

We think it proper that the costs of the cause should be paid by the Trustee, Union Planters Bank & Trust Company, out of the funds of the estate, and a judgment will be entered here to that effect.

Anderson, P. J., and Hamner, J., concur.