**Warren CHAILLE, Dorris Warren Stewart, Elizabeth Warren Guthrie, David L. Warren, Jr., and Ella Warren Henslee, Plaintiffs-Appellees,**

**v.**

**Max H. WARREN, Sr., Max H. Warren, Jr., Edward R. Warren, John L. Warren, Patty Henslee Anderson, Eloise Henslee Corwin, Martha Warren Dowling, and Guy M. Warren, Defendants,**

**and**

**Vallie Dee Warren Johnson and Christine Warren Collier, Defendants-Appellants,**

**Federal Land Bank, Intervenor.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

March 26, 1982.

Application for Permission to Appeal Denied by Supreme Court July 12, 1982.

Charles N. Griffith, Waverly, for plaintiffs-appellees.

Claude Callicott, Mark H. Collier, Nashville, for defendants-appellants.

OPINION

LEWIS, Judge.

The issues presented by this appeal are: (1) whether the Chancellor correctly interpreted certain provisions of the will of H. E. Warren, deceased, (2) the correct division of attorneys fees between the attorneys representing plaintiffs and the attorneys representing defendants, and (3) whether the Chancellor erred in permitting a judgment creditor of one of the defendants to intervene in the suit.

H. E. Warren executed his will in late 1896 and died in December, 1896. The will was probated at the March term, 1897, in the County Court of Humphreys County, Tennessee.

The pertinent provisions of Mr. Warren's will are as follows:

I, H. E. Warren, make this my last will and testament.

1st. I will unto my wife Lula Warren all of my landed estate, and she is to have full control of the same her life time or widowhood, the proceeds to be used by her for the benefit of herself and children. But should she marry again, then she forfeits all her right, title and interest and control of said land. Then the property goes into the hands of the executor of this will to be used for the benefit of my children . . . .

3rd. I hereby forbid the sale of any or all of the lands by my wife or my children during their life time, except the twelve and one-half acres that I have lying near the school-house and Church houses. This piece of land may be sold and the title thereunto be made by my executor.

5th. I also will unto my children the Steamer Lula E. Warren together with barges, and all her equipage to be leased, run, or controlled or sold by the executor of this will as he may think best, the proceeds of which shall go to my children. And if the said Lula E. Warren and

barges is sold then the proceeds together with all other proceeds hereinbefore willed to my children, shall be invested by the Executor of this will in real estate for my six children, Lula E. Warren, Max H. Warren, David L. Warren, Guy M. Warren and Ella Warren, and when invested the deed or deeds to be made to the aforesaid six children for their life time and at their death go to their bodily heirs.

So far as we are able to determine from the record, no real property was purchased by the executors pursuant to Item 5 of the will.

Mr. Warren left surviving him his widow, Lula E. Warren, who died intestate September 2, 1941, and six children, (1) Lula Ethel Warren Chaille, who died intestate leaving as her sole heir her son, Warren Chaille, (2) Guy M. Warren, who died intestate after this suit was filed and who left surviving him two children, (3) David L. Warren, who died intestate, leaving three children, (4) Max H. Warren, who lives in Miami, Florida and has four children, (5) Ella Warren Henslee, who resides in California and has two children, and (6) John L. Warren, who died intestate in 1907 without issue.

The Chancellor, in his Memorandum Opinion dated January 26, 1979, stated, *inter alia*: "In interpreting a will, the Court must give meaning to and fulfill the intention of the testator. In this instance H. E. Warren appears to have intended to have his property vest in his grandchildren."

We agree that "[t]he duty of the court is to ascertain from a consideration of the whole will the intention of the testator and this intention must be found in the will itself." *City of Memphis v. Union Planters National Bank & Trust Co.*, 30 Tenn.App. 554, 566, 208 S.W.2d 758, 763 (1947). We, however, cannot agree that H. E. Warren intended that *all* of his property vest in his grandchildren.

The fifth item of Mr. Warren's will is very specific in setting out that portion of his property that is to vest in his grandchildren. This was to be any real estate purchased out of the proceeds of the life insurance and from the sale of the Steamer

"Lula E. Warren," the barges, etc. While it would have been very simple to provide such specifics, none are contained in the first item.

The first item clearly gives his wife a life estate in the real property ("I will unto my wife Lula Warren all of my landed estate, ... her life time or widowhood"), but in the event she remarries "[t]hen the property goes into the hands of the executor of this will to be used for the benefit of my children." No provision is made for Mr. Warren's grandchildren as to any of the real property of which he died seized and possessed.

H. E. Warren predeceased his wife and, under the terms of the first item of his will, she was given a life estate subject to be defeated by her remarriage. Phillips, 1 *Pritchard Law of Wills* § 453 (3rd ed. 1955). The will makes no further disposition of his real property.

■ We are not unmindful that a "principle of general application is that there is a presumption against intestacy, either partial or complete ...." *Webb v. Webb*, 53 Tenn.App. 609, 613, 385 S.W.2d 295, 297 (1964). This, however, is not a conclusive presumption. There must be some intention in the language of the will from which the presumption arises. We are unable to find language in Mr. Warren's will which shows any intent that upon termination of his wife's life estate his children were to have a life estate and then his property vest in his grandchildren.

■ As to the real property of which H. E. Warren died seized and possessed, there was a partial intestacy and the property not disposed of by the will descends as if there was no will. *Magevney v. Karsch*, 167 Tenn. 32, 65 S.W.2d 562 (1933); *Perry v. High*, 40 Tenn. 349 (1859). At H. E. Warren's death in December, 1896, he had six children. At his death, a one-sixth undivided interest in the fee of the real estate vested in each of his children, *Shannon's Code* § 4163 (1896), subject to the life estate of Lula Warren.

The decree of the Chancellor holding that the children of H. E. Warren took only a life estate and that the fee in the real property would vest in the grandchildren is reversed.

We next consider defendants' contention that the amount of attorneys fees awarded to defendants' attorneys is insufficient.

Defendants insist that the amount of attorneys fees awarded should have been divided equally between plaintiffs' attorney and defendants' attorney.

As a result of partition, there have been two sales in the instant suit. The Chancellor awarded a total fee of $7500 from the first sale, $4500 of this was awarded to plaintiffs' attorney and $3000 was awarded to defendants' attorneys. In the second sale, the Chancellor awarded a total attorneys fees of $2850, $1850 to plaintiffs' attorney and $1000 to defendants' attorneys.

Defendants, in support of their contention that equal amounts for attorneys fees should be awarded, have cited *Montgomery v. Hoskins*, 222 Tenn. 45, 432 S.W.2d 654 (1968). *Hoskins*, however, does not stand for the proposition that equal attorneys fees must be paid, only that if any attorneys fees are paid out of the common fund when property is sold for partition, then reasonable attorneys fees for both parties must be considered, unless the service of one of the attorneys has been of no value to the party. Here, the Chancellor has allowed attorneys fees to both parties. He simply has determined that the attorney representing one of the parties is entitled to a larger fee than the attorneys representing the other party.

■ Whether to award an attorneys fee and the amount of the attorneys fee to be awarded is largly within the discretion of the Chancellor. The burden is on defendants in this Court to show that the Chancellor erred in exercising his discretion and that attorneys fees in equal amounts should be awarded.

■ We have reviewed the record and it fails to support defendants' insistence. Defendants have failed to carry their appellate burden. *Capital City Bank v. Baker*, 59 Tenn.App. 477, 442 S.W.2d 259 (1969).

Defendants do insist that they are entitled to attorneys fees for their services regarding this appeal. We are of the opinion that, on remand, the Chancellor should consider whether additional attorneys fees should be awarded to defendants' attorneys for their services regarding this appeal and, if so, the amount of such fee.

Defendants' argument in support of their issue that the Chancellor erred in permitting the Federal Land Bank, a judgment creditor of one of the defendants, to intervene is set out in full as follows: "Mr. and Mrs. Collier, several months ago, filed Petition in Bankruptcy under Chapter XI of the Bankruptcy Act. The Bankruptcy Court has jurisdiction as to the application of the assets of Mr. and Mrs. Collier, including any assets recoverable in this cause."

Rule 6(a)(3) of the Court of Appeals requires that "written argument in regard to each issue on appeal shall contain a statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing wherein the resultant prejudice is recorded." Defendants have failed to comply with Rule 6(a)(3).

■ However, even if defendants had complied with Rule 6(a), we are of the opinion that it is within the sound discretion of the Chancellor to determine whether to allow or refuse to allow a party to intervene. We find nothing in the record before us to show that the Chancellor erred in exercising his discretion in allowing the Federal Land Bank to intervene. This issue is without merit.

It results that the judgment of the Chancellor in determining that the children of H. E. Warren took a life estate and the fee in the real property vested in the grandchildren is reversed and, in all other particulars, the judgment of the Chancellor is affirmed. The cause is remanded to the Chancery Court for the entry of a decree in conformity with this opinion and for any further necessary proceedings.

TODD, P. J. (M.S.), and CANTRELL, J., concur.