# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs December 8, 2011

## IN RE: MARQUISE T. G.

### Appeal from the Juvenile Court for Giles County
No. 1973JS     John P. Damron, Judge

---

### No. M2011-00809-COA-R3-JV - Filed May 18, 2012

---

Father filed petition to modify custody, and maternal grandmother objected to Tennessee court's subject matter jurisdiction to hear the case because she had cared for child in Indiana for preceding thirty months. Grandmother also sought to intervene in father's action. The trial court concluded it had jurisdiction to determine the child's custody pursuant to Tenn. Code Ann. § 36-6-217(a) because both parents reside in Tennessee and the child has significant contact with Tennessee. The trial court allowed Grandmother to intervene only to protect her visitation rights. Grandmother appealed, and we affirm the trial court's judgment in all respects. Grandmother's only rights with respect to the child are any visitation rights she may be entitled to under Tenn. Code Ann. § 36-6-306.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Robert D. Massey, Pulaski, Tennessee, for the appellant, Kymberli Stacey.

Appellees did not participate.

## OPINION

This case primarily concerns the jurisdiction of a Tennessee court to modify a custody order when the child at issue has been living with his maternal grandmother in Indiana for thirty months prior to the filing of the petition. After considering the relevant statutes as well as the case law applying and interpreting the same, we conclude the trial court correctly determined it had jurisdiction to rule on the petition. Accordingly, we affirm the trial court's Order entered February 16, 2011, ruling the court had jurisdiction and limiting the grandmother's ability to intervene to the issue of any visitation interests she might have.

# I. BACKGROUND

Amber N. Newton ("Mother") and Bryant E. Gilbert ("Father") are the biological parents of Marquise T.G. Marquise was born on May 27, 2004, in Muncie, Indiana, where Kimberli Stacey, the maternal grandmother and appellant herein, resides. Mother and Father were not then, nor are they now, married. Mother lived with Marquise in Muncie for the first eighteen months of Marquise's life, and Father resided in Tennessee. Mother returned to Tennessee when Marquise was eighteen months old. When Marquise was three and a half years old, Mother filed a Petition to Establish Paternity with the Juvenile Court of Giles County, Tennessee. The court entered an Order of Paternity on October 3, 2007, establishing Father's status as Marquise's natural and legal father, requiring him to pay child support to Mother on a monthly basis, and granting Father visitation rights. Mother was named the primary residential parent.

In June 2008 Mother asked her mother, Ms. Stacey, to help out with Marquise. Ms. Stacey drove down to Tennessee, picked Marquise up, and brought him up to Muncie, Indiana to live with her. Ms. Stacey enrolled Marquise, who was then four years old, in preschool, and acted in the role of Marquise's primary caretaker for the following thirty months. Ms. Stacey enrolled Marquise in kindergarten when he was five years old and then enrolled him in first grade the following year. Ms. Stacey found a pediatrician and dentist in Muncie to see Marquise on a regular basis, and when Marquise developed allergies, Ms. Stacey found an allergist to treat Marquise as necessary. When Marquise needed to have his tonsils and adenoids removed, Ms. Stacey arranged for this surgery to be performed. Ms. Stacey enrolled Marquise in a local soccer program in Muncie and transported him to games and practices for fall, winter, and spring seasons.

There was evidence that while Marquise was living with her Ms. Stacey brought Marquise to Tennessee about ten times to visit Mother, and that Mother visited Marquise twice in Muncie. Father knew Marquise was living with Ms. Stacey in Muncie, but Father did not travel to Muncie to visit his son. Father spoke with Marquise over the telephone once or twice while Marquise was living in Muncie.

On October 27, 2010, Father filed a Petition to Modify Custody and for Contempt with the Giles County Juvenile Court. Father contended Mother did not give him proper notice regarding Marquise's relocation to Indiana and that the removal of Marquise from Tennessee circumvented the court's order granting Father visitation with his son. Father alleged he is gainfully employed and is "ready, willing and able to provide a stable and secure home" for Marquise. Father asked the court to modify its prior order by naming Father the primary residential parent and to hold Mother in contempt for her failure to abide by the court's order by allowing Marquise to be removed from Tennessee and relocated in

Indiana.

Ms. Stacey filed a Limited Appearance Contesting Jurisdiction and Motion to Intervene and Continue on January 18, 2011. She argued that any litigation concerning Marquise should take place in Indiana because Marquise had lived in Muncie from June 2008 through the date of the filing, and Indiana had become Marquise's home state. Alternatively, Ms. Stacey argued she should be permitted to intervene as a litigant if the Tennessee court determined it had jurisdiction to determine the issues raised in Father's petition for the following reasons: she had been the child's primary caregiver for the preceding eighteen months, she has a significant interest in Marquise, her ability to protect the child's best interests would be impaired if she were denied the opportunity to intervene, and substantial harm could result to Marquise if she were not permitted to intervene.

Father opposed Ms. Stacey's filing seeking permission to intervene and contesting the court's jurisdiction on the basis that Ms. Stacey lacks standing as a non-parent to respond to Father's petition that he be named the primary residential parent. Father contended Tennessee had jurisdiction to rule on his petition because he and Mother both reside in Tennessee and the trial court in Giles County had issued the prior order naming Mother the primary residential parent and granting Father visitation rights.

Mother did not oppose Ms. Stacey's filing. In reliance on Tenn. Code Ann. §36-6-217(a), Mother argued the Tennessee court no longer had continuing, exclusive subject matter jurisdiction because the child's home state had become Indiana and the child had no significant connection to Tennessee. Mother agreed that if the court determined it had jurisdiction over the matter, Ms. Stacey should be permitted to intervene to ensure her relationship with Marquise was maintained and to prevent substantial harm to the child.

## II. TRIAL COURT PROCEEDINGS

The trial court held a hearing on Ms. Stacey's filing contesting jurisdiction and seeking permission to intervene on February 4, 2011, during which it heard testimony from Father and Ms. Stacey. Concluding that it had jurisdiction to rule on Father's petition, the court denied Ms. Stacey's request that it dismiss the case. The court granted Ms. Stacey's request to intervene as a litigant, but only for the purpose of protecting her interests as a grandparent to visit her grandson.

Following the hearing, the trial court announced Findings of Fact and Conclusions of Law that it adopted in its Order dated February 16, 2011. The Findings of Fact and Conclusions of Law with respect to the jurisdictional issue include the following:

[T]he child has resided in Giles County, Tennessee, when the custody was given to the mother, Ms. Newton. Sometime thereafter – and, of course, the father was named the – and required to pay child support and given visitation rights. The mother sometime allowed her mother to take the child to Indiana giving her the permission to enroll him in school and to get medical treatments. The mother continues to live in Giles County, Tennessee, and the father still lives in Tennessee, the next county over, Lincoln.

. . . . .

And there's no doubt the child has been up there since 2008, June 8th of 2008, with limited physical contact with the State of Tennessee. And I believe it was testified that he's visited some ten times since he has been relocated to Indiana. Now, the statute provides that a child's residence is not necessarily the determination of a court's jurisdiction, it would have to be more than that. And one is the lack of a substantial, or a significant I believe is the terminology used by the court, significant contact with the state. Although the child has only been here ten times in the past three plus years, this 30 months or so, this – in this court's opinion, the child has maintained a significant contact, connection, with this state in that the . . . child's mother still has legal custody entered by the last valid court order in this matter, and that in itself is the significant connection to this state which would give this court the authority to retain jurisdiction.

Okay. Now, and I think the statute and the case law basically leaves it up to the discretion of the court to a certain degree to determine what the significant connection to this state is, as I say, fives times to the state, ten times to the state, or what it is about the significant connection to the state. And through that court order and with the parent maintaining residence in Giles County subject to the jurisdiction of this court, the child is also subject to the jurisdiction of this court. That's the way I interpret the law and the case law.

The court then turned to Ms. Stacey's request to intervene in the lawsuit as a litigant and explained:

This child has been with, as it's been well established in the testimony that was presented to this court earlier today, this child has been with the grandmother for over 30 months. I will find it appropriate that she be allowed to intervene as to the grandparent visitation, that he should - - but I don't think that she would be allowed to - - she can present evidence, but it's - - really, the

-4-

issue is visitation.  The issue of custody is between the parents.

The trial court then scheduled a trial to be held on May 3 and 4, 2011, to determine the issues Father raised in his petition.  The record does not include a transcript of the trial, but the record includes the Permanent Parenting Plan Order the trial court entered on May 16, 2011, that was agreed to by both Mother and Father.  Mother was named the primary residential parent and Father was awarded 135 days of visitation per year.  Ms. Stacey was awarded visitation with the child for two weeks in July of each year.

Ms. Stacey filed a Notice of Appeal in which she indicated she was appealing the trial courts Orders entered on February 16 and May 16, 2011.

### III. ISSUES ON APPEAL

On appeal Ms. Stacey argues the trial court erred in (1) determining it had continuing jurisdiction to modify its earlier decree regarding the custody of Marquise and (2) limiting Ms. Stacey's ability to intervene to protect her visitation rights rather than allowing her to participate as a full litigant.

### IV. TRIAL COURT'S JURISDICTION

Ms. Stacey is Marquise's grandmother, and has not been appointed the guardian or legal custodian.  Thus, the only rights she has as a grandparent are visitation rights as set forth in Tenn. Code Ann. § 36-6-306.[1]  She has no standing to challenge either the initial custody determination or modification of her grandchild's custody.  *State ex rel. Strickland v. Copley*, 2008 WL 3875425, at *5 (Tenn. Ct. App. Aug. 21, 2008) (non-parent lacks standing to contest change in custody).  Since Ms. Stacey lacks standing to contest the child's custody, which is the focus of Father's petition, she also lacks standing to challenge the Tennessee court's subject matter jurisdiction in this case.  *See Copley*, 2008 WL 385425, at *4-5 (state of North Carolina lacks standing to question Tennessee court's authority to change custody of child); 59 Am. Jur. 2d *Parties* § 38 (2008) ("A party generally must assert his or her own legal rights and interests and cannot rest his or her claim to relief on rights or interests of third parties.")

---

[1]Ms. Stacey was ultimately granted two weeks visitation with Marquise each July, and she does not contest the terms of her visitation on appeal.

Despite Ms. Stacey's lack of standing to raise the issue, however, we will consider the question of whether the trial court had subject matter jurisdiction in light of Rule 13(b) of the Tennessee Rules of Appellate Procedure.[2] *See Earls v. Mendoza*, 2011 WL 3481007, at *4 (Tenn. Ct. App. Aug. 10, 2011) (Court of Appeals *sua sponte* raised issue of trial court's subject matter jurisdiction to hear mother's post-divorce petition to modify parenting plan because by the time the divorce was granted, both parents and the children had moved to New York).

Subject matter jurisdiction provides the court with the authority to act, including the authority to modify a custody order. *In re Madison K.P.*, 2010 WL 4810665, at *4 (Tenn. Ct. App. Sept. 14, 2010) (citing *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996)); *In re Z.T.S.*, 2008 WL 371184, at *2 (Tenn. Ct. App. Feb. 12, 2008). Whether a court has subject matter jurisdiction is a question of law for which this court conducts a *de novo* review, with no presumption of correctness. *Button v. Waite*, 208 S.W.3d 366, 369 (Tenn. 2006); *In re Madison K.P.*, 2010 WL 4810665, at *4 (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)).

The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), codified at Tenn. Code Ann. §§ 36-6-201 *et seq.*, governs initial child custody decisions as well as proceedings to modify custody. The UCCJEA sets forth the circumstances in which a trial court that has made a child custody determination continues to have jurisdiction to modify that decree:

(a) Except as otherwise provided in § 36-6-219, a court of this state which has made a child-custody determination consistent with this part has exclusive, continuing jurisdiction over the determination until:

(1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

_____

[2]Rule 13(b) states:

Review generally will extend only to those issues presented for review. The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review, and may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process.

(2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

(b) A court of this state which has made a child-custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under § 36-6-216.

Tenn. Code Ann. § 36-6-217 (2010).

The UCCJEA explicitly gives the trial court that made the earlier custody decision the authority to determine whether its exclusive, continuing jurisdiction should continue or whether its jurisdiction has ended, based on the factors set forth in section 36-6-217 (a). We have described this authority as "a right of first refusal." *In re Madison K.P.*, 2010 WL 4810665, at *4 (quoting *Conover v. Conover*, 2010 WL 3420548, at *5 (Tenn. Ct. App. Aug. 31, 2010) (itself quoting *Jones v. Taylor*, 2006 WL 2450273, at *7 (Tenn. Ct. App. Aug. 21, 2006)). The *Conover* court explained that the trial court has a certain amount of discretion in deciding whether to retain or relinquish jurisdiction pursuant to Tenn. Code Ann. § 36-6-217(a). 2010 WL 3420548, at *5.

The UCCJEA provides that where there is a dispute about the proper construction of any section of the UCCJEA, the official comments "shall constitute evidence of the purposes and policies underlying such sections . . . ." Tenn. Code Ann. § 36-6-203. The official comments to section 36-6-217 state, *inter alia*, that:

[E]ven if the child has acquired a new home state, the original decree state retains exclusive, continuing jurisdiction, so long as the general requisites of the substantial jurisdiction provisions are met. If the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist.

Consistent with the official comment, this court has interpreted section 36-6-217(a)(1) to mean that "the Tennessee court making the original determination retains jurisdiction until it determines that neither the child nor the child and one parent have a significant connection with Tennessee and that substantial evidence relevant to the child's best interest is no longer available in Tennessee." *Cliburn v. Bergeron*, 2002 WL 31890868, at *9 (Tenn. Ct. App. Dec. 31, 2002); *accord Jones v. Taylor*, 2006 WL 2450273, at *6 (Tenn. Ct. App. Aug. 21,

2006). The *Cliburn* court explained that the initial rendering court retains exclusive, continuing jurisdiction so long as a parent remains in Tennessee and substantial evidence is still available in this state concerning the child's care, protection, training, and personal relationships. 2002 WL 31890868, at *5. If neither the child nor a parent lives in Tennessee, the original Tennessee court may lose jurisdiction. *Cliburn*, 2002 WL 31890868, at *9 n.16.

The UCCJEA defines "home state" as "the state in which the child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." There is no dispute that Marquise lived in Indiana with Ms. Stacey for the six months preceding Father's filing of his petition to modify custody. However, the Tennessee courts are not divested of jurisdiction just because Marquise's home state was not Tennessee for purposes of this proceeding. As the *Cliburn* court stated, so long as a parent remains in Tennessee and there is substantial evidence in Tennessee regarding Marquise's care, protection, training, and personal relationships, Tennessee retains continuing exclusive jurisdiction to modify its earlier decree.

The basis of Ms. Stacey's position that the trial court lacked subject matter jurisdiction is that Marquise lived with her in Muncie, Indiana for thirty months, and that his teachers, physicians, and friends are all in Indiana. Ms. Stacey relies on the case *Graham v. Graham*, 2009 WL 167071(Tenn. Ct. App. Jan. 26, 2009), to argue the trial court erred in concluding it had continuing, exclusive jurisdiction. The mother and father in *Graham* separated in 2000 and the mother moved with the children to Georgia that same year. *Id.* at *1. She then remarried and moved with the children to Florida in 2004. *Id.* at *2. The father remained in Tennessee throughout this time, and he exercised his visitation with the children in Tennessee and in Florida. *Id.* at *5.

The father filed a petition in 2006 for contempt and to modify and enforce based on the mother's failure to abide by the court's most recent order regarding the most recent parenting plan, and in early 2007 the father filed a petition for modification of the parenting plan and asked that he be named the primary residential parent. The father alleged a material change in circumstances based on alleged abuse against the children by the mother's then-estranged second husband while the children were living in Florida. *Id.* at *3, 4, 9. The mother moved to dismiss the father's petition on the basis that the Tennessee court lacked subject matter jurisdiction. *Id.* at *3, 4.

The trial court determined it had jurisdiction to hear the father's petition, and based on a finding of a material change in circumstances, the court granted the father custody over the children. *Id.* at *4. The mother appealed, *inter alia*, the trial court's determination that it had subject matter jurisdiction to consider the father's petition. *Id.* at *4-5. The Appeals Court agreed and reversed the trial court's judgment.

In addressing the jurisdictional question, the Appeals Court in *Graham* asked "whether the children have significant connections to Tennessee and whether there is substantial evidence in Tennessee regarding the custody determination to justify a finding of exclusive, continuing jurisdiction by the Tennessee courts or [whether] the children's relationship with Tennessee [has] become so 'attenuated' that the court could no longer find a significant connection to the state or that substantial evidence could be found in Tennessee regarding the alleged material change in circumstances." *Id*. at \*7. The *Graham* court noted that the children attended school in Florida, had friends in Florida, were involved in extracurricular activities in Florida, had physicians in Florida, and most importantly, the evidence regarding the alleged "material change in circumstances" and "best interests of the children" concerned events and relationships that occurred in Florida." *Id*. at \*5.

Because the events that allegedly took place in Florida formed the basis of the father's petition to change custody, the Appeals Court concluded the Tennessee courts no longer had continuing, exclusive jurisdiction over custody issues regarding the children. *Id.* at \*9; *see Conover v. Conover*, 2010 WL 3420548, at \*4-5 (Tenn. Ct. App. Aug. 31, 2010) (affirming trial court's decision to relinquish its jurisdiction over children's custody because mother's complaint centered around events that allegedly took place in Arkansas rather than Tennessee).

The facts of *Graham* are distinguishable from the facts before us, and the holding in *Graham* does not advance Ms. Stacey's argument. First and foremost, the father in *Graham* had alleged a material change of circumstances warranting a change in custody based on alleged abuse against the children while the children were living in Florida. Witnesses who could testify regarding Father's allegation of abuse as well as documentary or other evidence would likely be located in Florida, and the Tennessee court would not have jurisdiction over these witnesses. In this case, by contrast, there was no allegation of any specific event that occurred in Indiana that had any bearing on the court's determination of whether custody should remain with Mother or be changed to Father, and no witnesses located in Indiana were necessary for the court to determine whether Mother or Father should be named the primary residential parent. *See In re Madison K.P.*, 2010 WL 4810665, at \*9 (since neither parent resided with Madison in Georgia, where she had lived with her grandparents, there was no need to call as witnesses Madison's teachers or doctors in Georgia to determine whether Madison should live with Mother in New Jersey or Father in Tennessee). Second, the only parties in *Graham* were the children's parents, each of whom had a fundamental constitutional right to their children. *See Nale v. Robertson*, 871 S.W.2d 674, 680 (Tenn. 1994) (constitutional right of privacy includes parental rights); *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993) (parents have fundamental right to raise their children). Ms. Stacey,

by contrast, has no fundamental or constitutional right to raise Marquise. As Marquise's grandmother, she only has visitation rights as set forth in Tenn. Code Ann. § 36-6-306.

In the absence of extenuating circumstances of abuse or neglect, of which there is no evidence here, Mother and Father are the only individuals entitled to exercise custody over Marquise. *See State of Tennessee Dep't of Children's Servs. v. D.S.*, 2001 WL 487570, at *2 (Tenn. Ct. App. May 9, 2001) (in contest between parent and non-parent, parent cannot be deprived of child's custody absent finding of substantial harm to child). Because both Mother and Father reside in Tennessee and have continuously resided in Tennessee since the initial custody determination was made in 2004 naming Mother primary residential parent, we hold the Tennessee trial court had subject matter jurisdiction over Father's petition and properly exercised its discretion to retain jurisdiction over Marquise's custody determination pursuant to Tenn. Code Ann. §36-6-217(a).

## V. LIMITATION ON INTERVENTION

Ms. Stacey moved to intervene in the proceedings Father initiated to change custody from Mother to himself. Ms. Stacey indicated in her motion that she should be permitted to intervene because she had a "significant interest in the subject matter of this litigation, (*i.e.*, the custody and/or best interests of the minor child)."

Rule 24 of the Tennessee Rules of Civil Procedure addresses Intervention. Rule 24.01 governs "Intervention as of Right" and Rule 24.02 governs "Permissive Intervention." Ms. Stacey sought permissive intervention, which is permitted in the following situation:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising discretion the court shall consider whether or not the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The trial court permitted Ms. Stacey to intervene for the limited purpose of protecting her rights to visit with Marquise as provided in Tenn. Code Ann. § 36-6-306, entitled "Visitation rights of grandparents." The standard of review for the denial of permissive intervention is abuse of discretion. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000) (citing *Chaille v. Warren*, 635 S.W.2d 700, 703 (Tenn. Ct. App. 1982)). "An abuse of discretion exists when the reviewing court is firmly convinced that the lower court has made a mistake in that it affirmatively appears that the lower court's decision has no basis in law or in fact and is therefore arbitrary, illogical, or unconscionable.*" Brown*

*& Williamson Tobacco Corp.*, 18 S.W.3d at 191.

Ms. Stacey relies on *In re Askew*, 993 S.W.2d 1 (Tenn. 1999), and *Dean v. Compton*, 2000 WL 329351 (Tenn. Ct. App. March 30, 2000), to support her argument that she is not precluded from seeking custody of Marquise simply because she is not a natural parent. Although Ms. Stacey is correct she is not precluded from seeking custody, she introduced no evidence at trial, testimonial or otherwise, suggesting that either Mother or Father is unfit to have custody of Marquise or that Marquise would be subject to substantial harm if Mother or Father were named the primary residential parent, as she must before she can compete with Mother or Father for the custody of Marquise. *See Askew*, 993 S.W.2d at 4-5 ("clear finding of substantial harm" is necessary before natural parent can be deprived of her constitutional right to have custody of her child); *Dean*, 2000 WL 329351, at *1 (court awarded physical custody of children to maternal grandparents after finding substantial harm would result to children from an award of sole custody to either mother or father). In contrast to the case at bar, the trial court permitted the maternal grandparents in *Dean v. Compton* to intervene in the mother's divorce case because the grandparents alleged the natural parents had failed to provide for their children and that substantial harm may result to the children if either parent were awarded sole custody. 2000 WL 329351, at *1.

In her appellate brief, Ms. Stacey suggests for the first time that Mother and Father are unfit to have custody of Marquise and that substantial harm may occur if Marquise is placed with either parent. In her filing with the trial court, however, Ms. Stacey failed to allege either Mother or Father was unfit to care for Marquise or that substantial harm may result to Marquise if he were placed in either Mother's or Father's custody. Moreover, Ms. Stacey failed to suggest Mother or Father was unfit or that Marquise would suffer any harm if he were placed with Mother or Father when she testified at the hearing the trial court held on February 4, 2011, to determine whether Ms. Stacey should be permitted to intervene.

Appellate courts are not finders of fact, *State v. Flake*, 88 S.W.3d 540, 556 (Tenn. 2002), and "[a]s a general rule, 'questions not raised in the trial court will not be entertained on appeal,'" *City of Cookeville ex rel. Cookeville Regional Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905-06 (Tenn. 2004) (quoting *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn.1983)). Thus, we will not consider whether Mother and/or Father is unfit to care for Marquise or whether Marquise may suffer substantial harm by being placed with either Mother or Father.

Finally, Ms. Stacey relies on *Gonzalez v. State Dept. Of Children's Servs.*, 136 S.W.3d 613 (Tenn. 2004), to support her argument that she should have been permitted to intervene. Ms. Stacey's reliance on this case is misplaced. *Gonzalez* involved the termination of parental rights and whether grandparents should be permitted to intervene as a matter of

right. *Id.* at 614-16. Affirming the trial court's denial of the grandparents' motion to intervene, the Tennessee Supreme Court explained that there was no basis in the statutes, constitution, or common law to conclude that the rights and protections afforded parents should also apply to grandparents. *Id*. at 620. Similarly, there is no basis in the statutes, constitution, or common law concerning custody determinations to conclude the rights afforded parents should be extended to grandparents.

Because Ms. Stacey, as a non-parent, cannot compete with Mother's or Father's rights to have custody of Marquise based on the facts presented to the trial court, we conclude the trial court did not abuse its discretion in limiting Ms. Stacey's role as an intervenor to allow her to pursue her visitation rights as set forth in Tenn. Code Ann. §36-6-306.[3]

## V. CONCLUSION

We affirm the trial court's judgment (1) that it had continuing, exclusive jurisdiction pursuant to Tenn. Code Ann. §36-6-217(a) to rule on Father's petition to modify custody and (2) limiting Ms. Stacey's ability to intervene to protect her visitation rights as a grandparent pursuant to Tenn. Code Ann. § 36-6-306. Costs of appeal are assessed against the appellant, Kymberli Stacey, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

---

[3]Although Ms. Stacey appealed the May 16, 2011 Order, she did not refer to any particular part of this Order in her brief or ask that any part of the Order be changed. The May 16 Order granted Ms. Stacey two weeks of visitation with Marquise each summer, which Ms. Stacey does not contest.